**CAROTHERS et al. v. MILLS et al.**
**(No. 6200.)**

(Court of Civil Appeals of Texas. Austin. June 8, 1921.)

**1. Mines and minerals ⬅═55(8)—Term "mineral rights" need not be as a matter of law construed to include oil and gas, especially as it relates to a deed executed in 1899.**

While oil and gas are minerals, the term "mineral rights" need not be construed to include oil and gas as a matter of law, especially with relation to a reservation clause in a deed executed in 1899, when exploration for oil and gas was not so common as at present.

**2. Mines and minerals ⬅═48—Scientific meaning of "mineral" defined.**

In its broadest and scientific meaning a mineral is any inorganic species having a definite chemical composition.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Mineral.]

**3. Mines and minerals ⬅═55(5)—When question whether term "mineral rights" used in a deed reserving such rights in popular view of meaning may be inquired into.**

If the popular and usual view of the meaning of the term "mineral rights" used in a reservation of such rights in a deed was different from its scientific signification when the deed was executed, and it is alleged and proved that the parties regarded it in the former sense, inquiry may be made as to this intention, which should control, rather than any precise legal meaning.

**4. Mines and minerals ⬅═55(8)—Intention to include oil and gas in a reservation of mineral rights in a deed held for the jury.**

Evidence *held* to present a question for the jury as to whether parties to a deed executed in 1899 intended to include oil and gas in a reservation of "all mineral rights."

**5. Mines and minerals ⬅═55(8) — Plaintiffs, claiming that mineral rights reserved in deed did not include oil and gas, held bound to show both parties so understood, or that grantors at least so intended.**

In a suit wherein plaintiffs claimed oil and gas was not included in a reservation of mineral rights in a deed on which defendants claim right thereto, it devolved on plaintiffs to show that both parties to the deed mutually understood that the phrase "all mineral rights" in such reservation should not include oil and gas, or that grantors at least so intended, and it will not be sufficient to show that grantees alone had no intention that the oil and gas should be reserved.

**6. Vendor and purchaser ⬅═239(1)—Purchaser without notice of intention to reserve oil and gas held not affected.**

Where a deed reserved "all mineral rights," a purchaser from the grantee would not be affected by the intention of the original parties as to whether or not the reservation should include oil and gas, if he in good faith purchased without notice thereof.

Appeal from District Court, Mills County; F. M. Spann, Judge.

Suit by S. M. Carothers and others against J. J. Mills and others. Judgment for the defendants, motion to set aside verdict and judgment and for new trial overruled, and the plaintiffs appeal. Reversed and remanded.

J. C. Darroch, of Goldthwaite, and W. W. Hair, of Temple, for appellants.

Wilkinson & McGaugh, of Brownwood, for appellees.

BRADY, J. The following fair statement of the nature and result of the suit is taken from appellants' brief:

"Plaintiffs filed this suit April 15, 1919, against J. J. Mills and wife and H. W. Knickerbocker. The case was tried on May 17, 1919, before a jury. After the conclusion of the evidence the court instructed the jury peremptorily to return a verdict for the defendants, and on said instructed verdict the court rendered judgment on May 17, 1919, in favor of the defendants.

"On May 17, 1919, plaintiffs filed a motion for new trial, to set aside the verdict and judgment, which motion was overruled, and plaintiffs in open court excepted and gave notice of appeal to this court, and in due time filed their appeal bond, which was duly approved.

"The plaintiffs' petition alleged: That on October 30, 1899, the defendants J. J. Mills and wife conveyed by deed to Mrs. S. H. Carothers, wife of S. M. Carothers, one of the plaintiffs, the land in controversy, about 1,500 acres in Mills county, Tex., and that all the plaintiffs were the sole heirs of S. H. Carothers, deceased, and owners of the land. That said deed had written therein, the following clause: 'It being understood and agreed by and between the parties hereto that the said J. J. Mills,

grantor herein, reserves all mineral rights on said land, and the right and privilege to work same at any time he desires. He may also sell or transfer any part of said mineral rights.' That by virtue of said reservation the defendants J. J. Mills and wife are asserting and claiming ownership of all oil and gas in said land.

"The petition further alleged that J. J. Mills and wife, on or about the 21st day of May, 1918, did convey to defendant Knickerbocker, by instrument in writing purporting to be an oil and gas lease on the land therein described and mentioned, for a term of five years, the lease to the said Knickerbocker being 1,000 acres off the north side of the land in controversy. Petition further alleged that the substance of the terms of the lease were for oil and gas, laying pipe lines, etc., in the consideration of the sum of $1,000 and one-eighth of the oil produced and saved on said leased premises, and the sum of $1,000 per year thereafter to be paid by said Knickerbocker, at his option to said Mills in order to keep the lease alive. Petition further alleged: 'That the defendant Knickerbocker by virtue of said instrument is now claiming all the rights, privileges, and estate in and upon said land in and to the oil and gas in place in and under the same which are therein attempted to be conveyed to him by said Mills and wife, and is so claiming the same as against these plaintiffs.' And the petition of plaintiffs further alleged:

" 'Plaintiffs show to the court that they are the surviving heirs of said Mrs. S. H. Carothers, and the owners of said first above described tract of land, together with all the oil and gas now in place in and under the same, or which may hereafter be discovered in and under the same, during the ownership thereof by plaintiffs, or at any time hereafter; that the above reservation in deed from said Mills and wife to said Mrs. S. H. Carothers is wholly insufficient to pass to and vest in the said defendant Mills and wife any title to, claim, interest, or estate in such oil and gas, or in and upon said land for the purpose of prospecting for the same.

" 'That at the time of the execution of said deed from defendant Mills and wife to said Mrs. S. H. Carothers, containing said reservations, the existence, either actual or probable, of petroleum oil and natural gas in the portion of the state of Texas in which said land is located was wholly unknown and unthought of; that at said time there had been little, if any, oil and gas produced in the state of Texas, and none whatever in the county in which said land is located, or in any county adjoining the same, or in fact within a radius of several hundred miles from said land, and said products were not being produced at the time aforesaid in but few localities, if any, in the state of Texas, and in but small quantities; that if it shall appear to the court that petroleum oil and natural gas do come within the general designation of mineral, the plaintiffs say that the same were at said time not generally known to be such, or believed to be such, and that it was not within the contemplation of the said Mills and wife and the said Mrs. S. H. Carothers and her said husband, S. M. Carothers, at the time of the executing and taking of such conveyance, that the same should reserve to the grantors Mills and wife the oil and gas in and under said land, or the right to prospect the said land for oil and gas, and it was not the intention of the parties to said conveyance that the title to oil and gas should be reserved to the grantors by virtue of such reservations, or the right to prospect for the same; that it was only in contemplation of said parties and their intention that there should be reserved to grantors, by virtue of said reservation clause, the right to prospect said land for such minerals as gold and silver and copper.

" 'Plaintiffs show that the claim of ownership on the part of the defendants Mills and wife as against these plaintiffs is wholly without foundation in law or in fact, and that said defendants do not own the oil and gas in and under said land, or any part thereof; and that their purported lease to the defendant Knickerbocker is a nullity, and conveyed nothing to him; that said claims of the defendants, and the recorded lease from the defendant Mills to defendant Knickerbocker, are a cloud upon the title of these plaintiffs.

" 'Plaintiffs further show that in the event it shall appear to the court that for any reason the said lease to the defendant Knickerbocker is a valid lease as against plaintiffs, then plaintiffs say that they, and not the defendants Mills, are entitled to the rentals and royalties in said instrument required to be paid by the defendant Knickerbocker, upon the terms and conditions therein set forth, and that they are entitled to judgment against the defendants Mills and wife for the sum of $1,000 paid by said Knickerbocker to said defendants as the down payment on said lease.'

"Petition closes with a prayer, among other things, that plaintiffs have and recover the said defendants' title to the oil and gas in or under said tract of land as described, that is, 1,500 acres, for cancellation of the aforesaid lease of Mills and wife to Knickerbocker, and that plaintiffs be decreed to be the owners of the oil and gas in, under or on said land, etc.; and, further, that if said lease be held to be valid lease, plaintiffs recover title to the oil and gas subject to the lease, and for all rights and royalties hereafter to be paid by said Knickerbocker and heretofore paid by him, and for general and special relief, etc.

"Defendant Mills and wife answered by general denial. Defendant Knickerbocker answered by general denial and also alleged in connection with his lease for oil and gas from Mills and wife that he had purchased the same for valuable consideration, in good faith, without notice of the claims of plaintiffs, and that he was a bona fide purchaser thereof for value and without notice."

### Opinion.

[1] It is the contention of appellants that the cause should have been submitted to the jury, because the pleadings and evidence raised the issue that it was not the intention of the parties to reserve to the grantors any oil and gas in the land; and especially the issue as to what the parties mutually understood, agreed, and intended the meaning of the words "mineral rights" should be,

viewed in the light of the surrounding facts and circumstances. It is also claimed that an issue of fact was made by the pleadings and the evidence as to the mutual intention of the parties that the words "mineral rights," as used in this reservation, were intended to include only gold, silver, and copper. Appellees insist that the language of the reservation is clear and unambiguous, and that any evidence showing an intention of the parties contrary to the express language, "all mineral rights," was immaterial and inadmissible; and that therefore there was no issue for the jury.

We will examine these conflicting claims in the light of authorities deemed applicable, and of the principles which are thought by us to be controlling.

In Archer on the Law of Oil and Gas, c. 48, p. 834, this rule is announced:

"Whether petroleum or natural gas is conveyed by a deed, wherein all minerals underlying the tract are either reserved or conveyed, is a .question of intention. Such grant or reservation does not convey or reserve petroleum, oil or natural gas, unless the deed on its face shows an intention to do so, or unless such intention is proven by competent evidence."

Among the cases cited are Schuylkill Nav. Co. v. Moore, 2 Whart. (Pa.) 477, in which it was said:

"The best construction is that which is made by viewing the subject of the contract as the mass of mankind would view it; for it may be safely assumed that such was the aspect in which the parties themselves viewed it."

In McKinney's Heirs v. Central Ky. Gas. Co., 134 Ky. 239, 120 S. W. 314, 20 Ann. Cas. 934, a decision by the Court of Appeals of Kentucky, this language was used:

"It will be observed that gas is not specifically mentioned in either of the deeds; but in all of them the word 'minerals' is used, which counsel for the parties concede, when given its broadest meaning, includes natural gas. But the question to be determined is: What was the intention of the parties to the deeds at the time they were made? Did the grantors understand at that time that oil and gas were minerals and would pass with the other minerals named in the conveyances, and did they intend to convey the gas? In other words, did the minds of the parties to the conveyances meet upon the questions? Did the one understand that he was conveying, and the other that he was purchasing, the gas thereunder? If not, the gas did not pass with the conveyances. The solution of this question depends upon the language used in the conveyances and the facts and circumstances surrounding the parties at the time they made them."

While in some of the earlier decisions, especially those of the courts of Pennsylvania, it was held that the term "minerals" did not include oil and gas, the later decisions uniformly hold to the contrary; even the more recent Pennsylvania cases so decided, Our Supreme Court has held that oil and gas are minerals, and this must be regarded as now settled in this state. However, it does not follow that the term must be so construed, as a matter of law, despite the intention of the parties, especially with relation to a clause in a deed, made when the conveyance in controversy was executed, which was in the year 1899. It may be at this late day, when the exploration for and development of oil and gas is so common, and when courts are so uniformly holding these substances to be minerals, that the ordinary acceptation of the term "minerals" must be held to include oil and gas. Possibly it should be so held, although the parties ·may have intended otherwise, but, as stated, we do not think this ·is necessarily so under the facts and circumstances pleaded and sought to be proven in this case. We think the issue fairly arises in this case whether the phrase "all mineral rights" was intended by the parties to include oil and gas.

[2-4] In its broadest and scientific meaning, a mineral ·is any inorganic species having a definite chemical composition. However, in the light of the facts pleaded here, was it so regarded by the mass of mankind, and was it the ordinary acceptation of the term at the time the deed in controversy was executed? If the popular and usual view of its meaning was different from its scientific significance, and it should be alleged and proven that the parties regarded it in the former sense, ·it would seem to be the just and fair rule to permit inquiry into the intention of the parties, and that it should control, rather than any precise legal meaning. In the record it is shown that oil and gas were practically unknown in the section where the parties lived, and where the land was situated, at the date of the deed. There was also evidence that not only the grantees did not intend that the reservation should include oil and gas, but there is evidence tending to show, and sufficient to raise the issue, that the grantors did not so intend. There is evidence even tending to show that the grantors intended only to reserve gold, silver, and copper. It is not necessary to detail the evidence, but in the light of the facts shown in the record, and under the principle announced in the authorities heretofore cited, we have concluded that the case should have gone to the jury, and that the trial court erred in peremptorily instructing a verdict.

While not directly in point on the facts, we consider the reasoning in the able opinion of Mr. Chief Justice Phillips, in Greene v. Robison, 109 Tex. 367, 210 S. W. 498, applicable here. In that case, as well as in the earlier case of Schendell v. Rogan, 94 Tex. 585, 63 S. W. 1001, it was decided that

a reservation to the state of all minerals or mineral lands did not operate on lands not known to be mineral, nor upon minerals not known to exist. In Greene v. Robison, after quoting from Schendell v. Rogan, Mr. Chief Justice Philips suggested this significant question:

"If such a reservation did not operate on lands not known to be mineral, how can a reservation of minerals themselves operate on minerals not known to exist?"

It is true that in those cases the court was considering the meaning of certain acts of the Legislature, and the decisions doubtless turned largely on what was conceived to be the public policy of the state. However, it is also certain that the Supreme Court gave some effect to the consideration that it appeared that the lands in question were not known to contain minerals at the time they were classified and sold. The analogy to the instant case, in principle at least, is thought by us to make the reasoning applicable here. We see no difference in principle between the rules of construction in ascertaining the legislative intention or the effect of contracts with the state and those applying to ascertain the intention of the parties to a private contract. If the parties may break through the letter of the statute, in the one case, they can break through the letter of a deed, in the other, in order to arrive at the all-controlling question—the intention.

We realize that the authorities are not in harmony on this point, and that our conclusion is apparently in conflict with the holding of the Court of Civil Appeals for the Second District, in the case of Luse et al. v. Boatman, 217 S. W. 1096, in which a writ of error was refused by the Supreme Court. We think the conflict is not real, however, and that it does not necessarily follow that the Supreme Court approved the decision although the judgment of the court below, for those holding under the grantee, was reversed and rendered. It was there held that a reservation of "all minerals" included oil and gas. But the evidence as to intention of the parties was very meager. It was, perhaps, insufficient to raise any issue of fact as to whether the parties actually intended that the phrase should not include oil and gas. At all events, being satisfied that it is a question for the jury here, and not being convinced that the Supreme Court has held to the contrary, we do not accept the decision in Luse v. Boatman as being decisive of the case in favor of the grantors here.

[5, 6] In reversing and remanding the case, we think it proper to say that it devolves upon the plaintiffs to show that the parties mutually understood that the phrase "all mineral rights" should not include oil and gas, or that the grantors at least so intended.

It will not be sufficient in this action to show that the grantees alone had no intention that the oil and gas should be reserved. Furthermore, the rights of the appellee Knickerbocker would not be affected by the intention of the original parties, if he, in good faith, purchased without notice thereof.

Judgment is reversed, and the cause remanded.

Reversed and remanded.

---

⟐⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes