**PSENCIK et al. v. WESSELS et al.**

No. 9654.

Court of Civil Appeals of Texas. Austin.
Oct. 29, 1947.

Rehearing Denied Nov. 12, 1947.

Massey & Hodges and Hollis Massey, all of Columbus, for appellants.

C. C. Jopling, of La Grange, for appellees.

McCLENDON, Chief Justice.

This suit presents the question whether sand and gravel constitutes minerals within the meaning of a reservation of all minerals in a deed, otherwise absolute, conveying farm lands.

Milly and Julie are sisters. As their patrimony (at least in part) they inherited in equal shares 174.9 acres of farm lands in Fayette County, in three tracts of 45, 18.5, and 111.4 acres respectively. In all transactions and proceedings herein involved their respective husbands joined. January 9, 1941, after some negotiation, for $1,100 cash, Milly conveyed her half interest in the three tracts to Julie, by general warranty deed containing the following reservation: "Out of the grant hereby made there is, however, excepted and reserved to Milly Psencik, grantor herein, her heirs and assigns, for a period of thirty (30) years from and after this date, a one-half interest in and to all mines and wells of, and all minerals of whatever description, be the same gaseous, liquid, or solid, in and under the lands hereinabove described; so that henceforth, grantor herein shall have and continue to own for a period of thirty (30) years from and after this date an undivided one-half interest in and to all of the minerals under the above described three tracts of land; and it is understood and agreed that the grantor herein, her heirs and assigns, shall have and she hereby has the

right and power to take all usual, necessary and convenient means for working, getting, drilling for, laying up, dressing, making merchantable and taking away said minerals, and also for the said purposes, or for any other purpose whatsoever, to make and repair well, mines, shafts, tunnels, pipe lines and drains, in, upon, into and beneath such lands, and to lay and repair pipes under, upon or above them for conveying water to and from manufactory or other buildings. It is further agreed, stipulated, and understood that, at the expiration of thirty (30) years from and after this date the title to an undivided one-half interest in minerals as reserved herein to grantor shall cease and thereafter the entire fee simple title to all of said land, particularly including the mineral rights herein reserved, shall be in grantee, her heirs or assigns."

Early in 1946, Julie executed a sand and gravel lease upon the property, providing for a royalty of 5 cents per cubic yard thereof taken from the premises; the royalties paid to date of trial amounting to $300. Milly sued Julie in trespass to try title, claiming a one-half undivided interest in all sand and gravel upon and under the lands and in the royalties under the lease. The judgment, in a trial to the court, denied recovery and Milly has appealed.

Upon the trial Julie testified in substance that in the negotiations nothing was considered but oil rights, and that was all Milly was contending for. This evidence was admitted over timely objection upon the ground that "the instrument, including the reservation, was all-inclusive and unambiguous," and not subject to parol explanation or interpretation. The ruling is assigned as error; but since our decision is not dependent upon this testimony, this point will not be further noted.

The only other point urged is that the reservation "is all-inclusive and includes commercial sand and gravel."

The only parol evidence other than that of Julie, above, was that of her husband who testified, in substance: The sand and gravel was on the surface, embraced about one-half the area of the 111.4-acre tract, varied from two to three feet in depth, and

was extracted by means of a "ditcher." It was to be screened and washed and sold in Houston for building purposes. None of that dug up has as yet been sold but was in a pile on the premises. Digging the sand and gravel left deep holes in the ground and destroyed its usefulness for agricultural or grazing purposes for many years (estimated at about 15) thereafter.

■■ We have reached the conclusion that sand and gravel was not included in the reservation, which we base upon the following considerations: "While the word 'minerals' includes, in a technical sense, all natural inorganic substances forming a part of the soil, the term is used in so many senses, dependent upon the context, that such a definition is obviously too broad, for it would throw little, if any, light upon what was meant in a particular case. So, to apply the word in the signification in which it is employed in the scientific division of all matter into the traditional three kingdoms, to a grant of land containing an exception of the minerals, would be absurd, since all land belongs to the mineral kingdom, and the exception could not be given effect without destroying the grant." 36 Am.Jur., p. 283.

This is a generally accepted legal principle. Its application to the varied instruments, documents and statutes that have been presented to the courts for construction, has (as might be expected) given rise to no little conflict, apparent or real, in the decisions of other jurisdictions.

The Texas cases cited by the respective parties as having some bearing upon the question at bar, listed chronologically, are: Right of Way Oil Co. v. Gladys City Oil, Gas & Mfg. Co., 106 Tex. 94, 157 S.W. 737, 51 L.R.A.,N.S., 268, affirmed Tex.Civ. App., 137 S.W. 171; Luse v. Boatman, Tex. Civ.App., 217 S.W. 1096, error refused; Carothers v. Mills, Tex.Civ.App., 233 S.W. 155; Præletorian Diamond Oil Ass'n v. Garvey, Tex.Civ.App., 15 S.W.2d 698, error refused; Shell Petroleum Corporation v. Liberty Gravel & Sand Co., Tex.Civ. App., 128 S.W.2d 471; Cage Bros. v. Whiteman, 139 Tex. 522, 163 S.W.2d 638. We briefly review these decisions from the viewpoint of their pertinence here.

In the Right of Way case [106 Tex. 94, 157 S.W. 738] it was held that oil and gas did not pass in a deed conveying to a railroad "for the purpose of constructing, operating and maintaining its railroad, the right of way, two hundred feet in width, over and upon the above-described tract of land; together with the right to take and use all the timber, earth, stone and mineral existing or that may be found within the right of way hereby granted." Expressed consideration of the deed was $1 and the advantage to grantor of constructing a railway over the tract. The court applied the doctrine of ejusdem generis and construed the word "mineral" as applying only to the same class as " 'timber, earth, stone,' * * * that is, such as may be found upon or near the surface, as gravel and the like. It is contrary to all precedent to give it the effect to include the superior class, 'mineral oil,' which is to be found at great depth and is of much greater value." Obviously "gravel" as mineral falls in the same general class as "timber, earth and stone," in fact might well be included in "earth", and equally obviously "mineral oil" does not. The applicability to the case at bar is in the implicit holding that the wording of the instrument must be construed in the light of its evident purpose, the context, and the surrounding circumstances. See also Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Tex. 574, 136 S.W.2d 800, 127 A.L.R. 1217 (not cited by either party), for a case in which the ejusdem generis rule was not applied.

The holding in the Luse case was that oil and gas were included in a reservation of all the "coal and mineral" with the right "to mine and remove the same." The same holding was applied in the Carothers case to a reservation of "all mineral rights on said land, and the right and privilege to work same at any time he desires." [233 S.W. 156.] It was held, however, that a fact question as to the true intention of the parties was raised by the pleadings and evidence. We are not here concerned with the conflict, whether real or merely apparent between these two decisions, as our holding is independent of the parol evidence of the intention of the parties.

The Prætorian case held that "gravel" was not included in a lease of "oil, gas and other minerals" where the lease provided for erection of derricks, tanks, and for laying pipe lines, but contained no provisions for mining or disposition of gravel and provided for lessor's compensation by delivery of ⅛ royalty of minerals in pipe lines or tanks. This holding was followed in the Shell case. However, the terms of the mineral lease are not stated in the opinion, the holding being simply that "building sand" was not a mineral within the granting clause of the lease.

In the Cage Brothers case the general principles applicable to mineral leases were applied to a lease "for the sole and only purpose of excavating, processing and marketing sand and gravel on or under said land," sand and gravel being referred to in the opinion as "solid minerals."

From these as well as cases from other jurisdictions, the general rule in the abstract has been deduced that "a conveyance or exception of 'minerals' in a deed, lease, or license includes all mineral substances which can be taken from the land, and to restrict the meaning of the term there must be qualifying words or language evidencing that the parties contemplated something less than all substances legally cognizable as minerals." Case Note 17 A. L.R. page 156; Id., 86 A.L.R. page 984. If the accuracy of this rule be conceded, it must be with proper limitations upon the expression "legally cognizable as minerals." Without limitation the rule would conflict with that in the above quotation from 36 Am.Jur., p. 283. No doubt every inorganic component of the earth's crust is legally *cognizable* as mineral, if the parties affected choose so to deal with it; and this no doubt is true regardless of whether it may be removed or extracted for commercial or other profitable purposes. We know of no rule which would deny the owner of the soil the right to sever the title of any such component from the general title to the soil. Such severance would unquestionably constitute a mineral title. The term "legally cognizable as minerals" must therefore be restricted to such minerals and mineral substances as are commonly regarded as

minerals as distinguished from the soil in general. We have examined many cases and texts and we do not find that either sand or gravel is generally regarded as a mineral within the general term "all minerals", unless there is something in the context or surrounding circumstances to so indicate. We refer generally to the authorities digested under the several heads, particularly "sand" and "gravel" in each of the above A.L.R. Notes. In some of the cases the courts adverted to the fact that neither sand nor gravel has a definite chemical composition which would entitle it to be classed as a mineral. See Webster's International Dictionary. As said in United States v. Aitken, 7 Philippine 7: "* * * There is nothing constant in the character of commercial gravel by which to identify it as a mineral, except that it consists of broken fragments of rock mingled with finer material, such as sand and clay. Nothing definite can be said of its chemical composition as can be said of the minerals."

A very interesting and instructive English case (Waring v. Foden, 1 Ch. 276) is reported in 86 A.L.R. 969, in which it was held that a reservation of "all mines, minerals and mineral substances within or under" the property, did not include commercial sand and gravel, which was prevalent in the property and in the vicinity. We cite this case specifically because of its review of the English authorities upon the subject, and of the grounds upon which it is rested. In some respects it is not in point here, as the decision is rested, at least in part, upon the wording of the mining operations expressly granted. Among the principles it announced are: "first, that the word 'minerals' when found in a reservation of a grant of land means substances exceptional in use, in value and in character * * * and does not mean the ordinary soil of the district which if reserved would practically swallow up the grant * * * and, secondly, that in deciding whether or not in a particular case exceptional substances are 'minerals' the true test is what that word means in the vernacular of the mining world, the commercial world, and land owners at the time of the grant, and whether the particular subject

was so regarded as a mineral." It was said that the sand and gravel were scattered over a wide area in the neighborhood of the property and "one of the gravel pits is on the farm itself. * * * Further, the sand and gravel are not substances which are exceptional in use or value; they are used mainly if not wholly for building and road-making purposes, and their commercial value depends entirely on local requirements and facilities for transportation."

■ As illustrative of the principle that *the use to which the property is ordinarily suited may control in determining the meaning of "minerals"*, the case of Northern Pacific R. Co. v. Soderberg, 188 U.S. 526, 23 S.Ct. 365, 47 L.Ed. 575, is instructive in its holding that lands valuable solely or chiefly for granite quarries are "mineral lands" within the meaning of the exception of such lands from a grant to the railroad in an act of congress.

The Attorney General of Texas delivered an opinion (No. 197) to the Land Commissioner, February 16, 1937, holding that neither granite, building stone, gravel or caliche is included in "all other minerals" within the meaning of Art. 5310, R.C.S. The opinion gives a very thorough digest and review of the authorities on the subject and the reasoning is cogent.

■ We have not, of course, attempted anything like a review or even citation of the many authorities which have bearing upon the subject, although we have given them our careful consideration. We leave that to the law writers and annotators. The reservations in the grant were evidently copied from Judge Stayton's "Texas Form Book", 2d Ed., p. 187, entitled "Clause Reserving Minerals," and clearly, we think, was not intended to refer to sand or gravel. It is a matter of common knowledge that where those subjects are dealt with they are referred to specifically (e. g. see Gantt v. McClellan, Tex.Civ.App., 252 S.W. 229, 233, error refused) and that in the common vernacular of those dealing in farm lands and mineral rights the term "minerals" does not include ordinary commercial gravel. It might as well be held to include

fertile top soil, which, under conditions arising subsequently to the grant, should become commercially valuable for replenishing lawns in an adjacent city, or other soil for filling lots or building roads. It would serve no useful purpose to analyze the specific provisions of the reservation in question. Its terms do not indicate or suggest that sand or gravel is included.

The trial court's judgment is affirmed.

Affirmed.