

# THE ATTORNEY GENERAL
## OF TEXAS

**AUSTIN 11, TEXAS**

PRICE DANIEL
ATTORNEY GENERAL

February 12, 1948

Hon. D. C. Greer          Opinion No. V-499.
State Highway Engineer
Austin, Texas          Re:   The applicability of out-
standing mineral reserva-
tions and conveyances to
iron ore gravel to be used
for highway construction
and maintenance under the
submitted facts.

Dear Sir:

The facts involved in your request stated brief-
ly are as follows:  The Highway Department needs a quan-
tity of iron ore gravel for the construction and mainten-
ance of highways in San Augustine County.  This material
can be found upon a certain tract of land presently owned
by the United States Forest Service, which acquired the
land subject to specific mineral reservations hereinafter
quoted.  The Forest Service has granted permission to the
Highway Department to open gravel pits upon the land and
remove as much gravel as required free of charge.  The
present mineral owner, Long-Bell Petroleum Company, Inc.,
claims under the above-mentioned mineral reservations
that the gravel is a mineral and as such belongs to it;
and the Long-Bell Petroleum Company, Inc. demands pay-
ment for the gravel at 7½ cents per cubic yard.  The deed
acquired by the Forest Service from Long-Bell Petroleum
Company, Inc.,  contained the following exceptions and
reservations:

"1.   All property and mineral rights
conveyed to the grantee in the deeds from
The Long-Bell Lumber Company and Long-Bell
Lumber Sales Corporation, dated December 31,
1931, of record in Volume 72, pages 195 and
186, respectively, San Augustine County Deed
Records; and

"2.   All property and mineral rights
reserved in deed from A. F. Kountze to
David L. Gallup, dated July 18, 1902, of
record in Volume W, page 423, San Augustine
County Deed Records; and

"3. All property and mineral rights reserved by Texas Land & Cattle Company in deed to John H. Kirby, dated July 5, 1902, of record in Volume W, page 247, San Augustine County Deed Records; and

"4. All property and mineral rights reserved in deed from Patrick A. Ducey to E. B. Hayward, dated January 15, 1902, of record in Volume V, page 484, San Augustine County Deed Records; and

"5. All property and mineral rights reserved in deed from P. H. Whitten to Lufkin Land & Lumber Company, dated November 23, 1903, of record in Volume Z, page 126, San Augustine County Deed Records; and

"6. All property and mineral rights reserved in deed from The Texas Company to W. R. Cousins, dated November 24, 1919, of record in Volume 55, page 194, San Augustine County Deed Records; and

"7. All property and mineral rights conveyed to the grantee in the deed from the Long-Bell Lumber Company to Long-Bell Petroleum Company, Inc., dated October 10, 1935, of record in Volume 75, page 547, San Augustine County Deed Records."

Long-Bell Petroleum Company, Inc., acquired the mineral rights from Long-Bell Lumber Sales Corporation. In that deed the pertinent language was:

"DEED FROM LONG BELL LUMBER SALES CORPORATION TO LONG BELL MINERALS COMPANY

"has granted, sold and conveyed and by these presents does grant, sell and convey unto the said Long Bell Minerals Corporation all of the oil, gas and other minerals of each kind or character, on, in and under,and that may be produced from the following described tracts, or parcels of land situate in the County of San Augustine.

"together with full rights to explore, drill, and mine said lands for said oil, gas, and minerals, and to produce and remove the same therefrom, and with the right of ingress and egress, right of way easements and servitudes, for pipe lines, telephone and telegraph lines, tanks, power houses, stations, gasoline tanks, and fixtures for producing, treating and caring for such products, and all rights' and privileges incidental to the rights hereinabove specifically granted and reasonably necessary for the economical operation of said land for the production of said minerals."

Based upon these facts, you have asked two questions which we quote:

" . . . will you please advise us if the iron ore gravel desired by this Department for highway construction and maintenance purposes is such a mineral as is contemplated by the reservations and conveyances quoted and whether it is owned by the United States Forest Service or by the Long-Bell Petroleum Company, Inc., . . ."

From information furnished to us by your Department, we understand the term "iron ore gravel" to mean ordinary commercial gravel which does not contain iron ore of such content as to be valuable commercially for such ore. Our opinion assumes the correctness of this information.

This same question involving almost identical facts was recently before the Court of Civil Appeals at Austin in the case of Psencik v. Wessels, 205 S. W. (2d) 658. Writ of error was refused by the Supreme Court on January 7, 1948. In that case, two sisters inherited in equal shares three tracts of farm land. One of the sisters, Milly, conveyed by warranty deed her one-half interest to the three tracts to the other sister, Julie. The deed contained the following reservations:

"Out of the grant hereby made there is, however, excepted and reserved to Milly Psencik, grantor herein, her heirs and assigns, for a period of thirty (30) years from and after this date, a one-half interest in and to all mines and wells of, and all minerals of whatever description, be the same gaseous, liquid, or solid,

in and under the lands hereinabove des-
cribed; so that henceforth, grantor herein
shall have and continue to own for a per-
iod of thirty (30) years from and after
this date an undivided one-half interest
in and to all of the minerals under the
above described three tracts of land; and
it is understood and agreed that the grant-
or herein, her heirs and assigns, shall
have and she hereby has the right and power
to take all the usual, necessary and con-
venient means for working, getting, drill-
ing for, laying up, dressing, making mer-
chantable and taking away said minerals,
and also for the said purposes, or for any
other purpose whatsoever, to make and re-
pair wells, mines, shafts, tunnels, pipe-
lines and drains, in, upon, into and be-
neath such lands, and to lay and repair
pipes under, upon or above them for convey-
ing water to and from manufactory or other
buildings. It is further agreed, stipulated,
and understood that, at the expiration of
thirty (30) years from and after this date
the title to an undivided one-half interest
in minerals as reserved herein to grantor
shall cease and thereafter the entire fee
simple title to all of said land, particu-
larly including the mineral rights herein
reserved, shall be in grantee, her heirs or
assigns."

Afterward Julie leased the property for sand and gravel
for a royalty of 5 cents per cubic yard. Milly sued
Julie in trespass to try title, claiming a one-half un-
divided interest in the sand and gravel on the grounds
that such sand and gravel were minerals as contemplated
in the mineral reservation above quoted. The Trial Court
denied recovery and on appeal the Austin Court of Civil
Appeals concluded after a thorough discussion of author-
ities:

"It is a matter of common knowledge
that where those subjects are dealt with
they are referred to specifically (e. g.
see Gantt v. McClellan, Tex. Civ. App.,
252 S. W. 229, 233, error refused) and
that in the common vernacular of those
dealing in farm lands and mineral rights

the term 'minerals' does not include ordinary commercial gravel.  It might as well be held to include fertile top soil, which, under conditions arising subsequently to the grant, should become commercially valuable for replenishing lawns in an adjacent city, or other soil for filling lots or building roads.  It would serve no useful purpose to analyze the specific provisions' of the reservation in question.  Its terms do not indicate or suggest that sand or gravel is included."

From the language contained in the deeds to the United States Forest Service and from Long-Bell Lumber Sales Corporation to Long-Bell Petroleum Company, Inc., we find nothing to indicate any purpose or intention to reserve gravel as a part of the minerals.  We believe that the decision in the above-quoted case of Psencik v. Wessels, answers fully the questions involved in your request. It is, therefore, our opinion that this gravel is not included in any of the reservations mentioned.  It is further our conclusion that the gravel is owned by the United States Forest Service.

## SUMMARY

A warranty deed reserving "all of the oil, gas and other minerals of each kind or character, on, in and under, and that may be produced from (the land conveyed) . . ." does not include gravel within its meaning. The grantee in such deed is the owner of the gravel unless there is qualifying language specifically showing an intent to reserve the gravel.  Psencik et al. v. Wessels et al., 205 S. W. (2d) 658, (Civ. App.,1947, writ ref'd.).

Very truly yours

APPROVED:

ATTORNEY GENERAL OF TEXAS

By

ATTORNEY GENERAL.

Charles E. Crenshaw
Assistant

CEC:jmc