ANCHORAGE SAND & GRAVEL CO., Inc.
v. SCHUBERT et al.

SUPERIOR SAND & GRAVEL MIN. CO.,
Inc. v. SCHUBERT et al. (two cases).

Civ. Nos. A–8385, A–8422, A–8423.

District Court, Alaska
Third Division, Anchorage.

Sept. 8, 1953.

J. L. McCarrey, Anchorage, Alaska, for plaintiff Anchorage Sand & Gravel Co., Inc.

John E. Manders, Anchorage, Alaska, for Superior Sand & Gravel Min. Co., Inc.

E. L. Arnell, Anchorage, Alaska, for defendant Northern Const. Ass'n.

Thomas B. Stewart, Asst. Atty. Gen. of Alaska, for Territory of Alaska.

FOLTA, District Judge.

The foregoing actions were brought under the provisions of 30 U.S.C.A. § 30, to determine the right of possession under the mining laws of the United States to a part of the public lands reserved to the Territory of Alaska for school purposes by the Act of March 4, 1915, 38 Stat. 1214, 48 U.S.C.A. § 353. Since the consolidation of these actions, the defendant, Territory of Alaska, has moved to dismiss on the following grounds that:

(1) The discovery of sand and gravel is not, and was not at the time of making the alleged mineral discoveries, a legal basis sufficient to support the location of mineral claims on the lands involved herein under the laws of the United States.

(2) Ordinary sand and gravel are not "minerals" within the meaning of that term as used in the general mining laws of the United States.

(3) The land embraced within the placer mining claims alleged in the complaint was not at the time of their location available to such location because of prior appropriation and use of the land by the United States of America and the Territory of Alaska for purposes of support of the common schools of Alaska and for other purposes.

(4) Public lands of United States, reserved by Act of Congress from sale or settlement for the support of the common schools of Alaska, are not subject to placer mining locations for sand and gravel.

The land involved is adjacent to the City of Anchorage and like that upon which the City is built, consists almost exclusively of gravel, which is valuable not only because of its proximity to the City but also because of construction activities.

To permit of the disposal of timber and the extraction of minerals from school lands under the mining and mineral leasing laws of the United States, the Act of August 7, 1939, 53 Stat. 1243 was passed. This legislation was implemented by Chapter 101 S.L.A.1933, Section 47–2–78 et seq., A.C.L.A.1949, empowering the Governor to lease these lands.

By October, 1950, the land here involved had been leased, and gravel was being removed from a portion of it, by the Anchorage Sand & Gravel Co., Inc., under a contract entered into with the

Department of the Interior, pursuant to the authority conferred upon that Department by the Act of July 31, 1947, 61 Stat. 681, 43 U.S.C.A. §§ 1185, 1187 commonly referred to as the "Materials Act". Manifestly, the removal of gravel would gut the land and render it worthless.

In November and December, 1950, the Anchorage Sand & Gravel Co., Inc., the Superior Sand & Gravel Mining Co., Inc., and the Northern Construction Association, parties to the actions now consolidated, also made locations of placer claims on the land under claims of discovery of sand and gravel. When the Northern Construction Association applied for a patent, the other claimants and the Territory of Alaska filed adverse proceedings in the land office and, in support thereof, the instant actions were instituted in this Court in which the Territory of Alaska was named as defendant.

Two questions are presented:

(1) Whether gravel is a "valuable mineral deposit" under the mining laws of the United States and, if so,

(2) Whether school lands in Alaska are open to location under the mining laws.

So far as the first question is concerned, the problem appears to be primarily one of ascertaining Congressional intent rather than of etymology. Section 22 of Title 30 U.S.C.A. provides that:

"Except as otherwise provided, all valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, shall be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States and those who have declared their intention to become such, under regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States."

The state of the precedents is such that the question may be regarded as an open one, to be resolved upon a consideration of factors bearing on intent in the light of history and such authorities as are available.

It is undisputed that the entire area involved, as well as contiguous areas, consists of sand and gravel possessing no particular property or characteristic which would enhance their value above that which is attributable to proximity of the land to Anchorage and the scene of construction activities.

Within a year after the enactment of the mining law of 1872, the view of the Land Department as to the meaning of the word "mineral" was set forth in a circular of instructions as follows, 1 Lindley on Mines, 163, 3rd ed.:

"In the sense in which the term 'mineral' was used by Congress, it seems difficult to find a definition that will embrace what mineralogists agree should be included. * * * From a careful examination of the matter, the conclusion I reach as to what constitutes a valuable mineral deposit is this: That whatever is recognized as a mineral by the standard authorities on the subject, where the same is found in quantities and quality to render the land sought to be patented more valuable on this account than for the purpose of agriculture, should be treated by the office as coming within the purview of the Mining Act of May 10, 1872."

This view was followed in Zimmerman v. Brunson, 1910, 39 L.D. 310. A like conclusion was reached in a well-reasoned opinion in United States v. Aitken, 1913, 25 Phil. 7. However, Loney v. Scott, 1910, 57 Or. 378, 112 P. 172, 32 L.R.A.,N.S., 466, to the contrary, appears to extend the meaning of "mineral" to anything of value extracted from the land. Aside from the fact that this would seem to be a rather dubious test, it may perhaps be accounted for by the fact that that Court in 112 P. at page 175 mistook a statement of the theory of one of the parties in Northern Pacific Ry. Co. v. Soderberg, 188 U.S. 526, 534, 23 S.Ct. 365, 47 L.Ed. 575, for the opinion of the Supreme Court. Perhaps influenced by Loney v. Scott, the Land Department in Layman v. Ellis, 1929, 52

L.D. 714, overruled the Zimmerman case and adhered to that decision in 54 L.D. 294 and United States v. Barngrover, 1942, 57 L.D. 533.

It is difficult for me to avoid the conclusion that in these cases undue weight was given to the value of gravel, as reported by the United States Geological Survey, and that the rule there enunciated may be attributed to a shift of emphasis from composition of the substance alleged to be mineral to value. I am inclined, therefore, to reject this criterion and to concur in the view that sand and gravel are not minerals, particularly where the location is made on land consisting almost exclusively of gravel, not only for the reasons stated by the authorities cited, but also because effect must be given to the implications of the word "discovery" in 30 U.S.C.A. § 23 and the clause "and the lands in which they (mineral deposits) are found" in Section 22 of that title. Congress must have had in mind minerals which exist separately and differ from the surrounding matter in which they are found and from which they may be taken only by extraction and mining, United States v. Iron Silver Mining Co., 128 U.S. 673, 679, 9 S.Ct. 195, 32 L.Ed. 571; Hendler v. Lehigh Valley R. Co., 209 Pa. 256, 58 A. 486, 487. Undoubtedly in requiring a discovery of mineral as a prerequisite to the appropriation of the land in which it is found, Congress intended to limit such appropriation and yet stimulate prospecting by rewarding the prospector who found a valuable mineral. In the traditional sense, it is difficult to conceive of a discovery not attendant with great hardship, effort and expense. 2 Lindley on Mines, Section 437, 3rd ed. To say that a discovery of gravel may be made in a large area of gravel open to view is to say that there can be a discovery of water in Cook Inlet or snow on Mt. McKinley. Such a perversion of the term would not only obliterate the safeguard referred to and result in the appropriation of large areas of the public domain to the detriment of the public, but it would also ignore the clause "and the lands in which they are found" in Section 23, of Title 30. It is incon-

ceivable that this was within the contemplation of Congress. Further support for this view may be found in the fact that by the Act of July 31, 1947, 61 Stat. 681, 43 U.S.C.A. § 1185 et seq., Congress authorized the disposition of sand, gravel, stone and clay from the public land. Since this act bears a close analogy to the mineral lands leasing act, it would appear to follow that sand and gravel, like the minerals specified in the latter act, were not intended to be disposed of under the mining laws, Cf. Matter of Van Dolah, A–26443, decided Oct. 14, 1952, by the Interior Department; Dunbar Lime Co. v. Utah-Idaho Sugar Co., 8 Cir., 17 F.2d 351, 355–356; Holman v. State, 41 L.D. 314.

The questions argued on behalf of Northern Construction Association and the Superior Sand and Gravel Mining Co., Inc., in opposition to the motion to dismiss, are either not presented by the record or are not involved and, hence, do not merit extended discussion.

I am of the opinion, therefore, that the motion should be granted.