J. R. OSBORNE, in his own behalf and as Agent for R. R. Borders et al., Plaintiffs,

v.

Harold C. HAMMIT, Individually and as Manager of the Nevada Land Office, Bureau of Land Management, United States Department of the Interior, Defendants.

Civ. No. 414.

United States District Court, D. Nevada.

Aug. 20, 1964.

Morse & Graves, Las Vegas, Nev., for plaintiff.

John W. Bonner, U. S. Atty., U. S. Courthouse, Las Vegas, Nev. and Thomas C. McKevitt, Atty., Dept. of Justice, Washington, D.C., for defendant.

## FINDINGS OF FACT, OPINION AND DECISION

BRUCE R. THOMPSON, District Judge.

The jurisdiction of this Court was invoked pursuant to 5 U.S.C. § 1009 and 28 U.S.C. § 2201, by J. R. Osborne and others to review the final decision of the Secretary of the Interior dated October 23, 1961 cancelling certain unpatented mining claim locations. The trial was limited to the reception of the entire record of the administrative proceedings. Evidence aliunde such record was rejected. The Court, having reviewed the evidence and the arguments made on behalf of the respective parties, does now make the following Findings of Fact: .

## FINDINGS OF FACT

1. On December 1, 1948, the Bureau of Land Management, Department of the Interior, State of Nevada, issued an oil and gas lease covering the NW¼ and NW¼ of NE¼ of Section 32, T. 22 S., R. 61 E., M.D.M., Clark County, Nevada, which expired December 1, 1953 and which was in full force and effect in June, 1952.

2. On June 23, 1952, plaintiffs located four association placer mining claims, three of which are involved in this action, as follows:

(a) Bradford No. 1 Placer Mining Claim, embracing the NE¼ of Section 32, T. 22 S., R. 61 E., M. D.M.

(b) Bradford No. 2 Placer Mining Claim embracing the SE¼ of Section 32, T. 22 S., R. 61 E., M. D.M.

(c) Bradford No. 3 Placer Mining Claim embracing the NW¼ of Section 32, T. 22 S., R. 61 E.

Each claim appropriated sand and gravel as valuable minerals contained within the boundaries thereof.

3. On June 10, 1953, the Bureau of Land Management initiated contest proceedings attacking the validity of the three mining claims as follows: Contest No. 2476, attacking Bradford No. 2; Contest No. 2477, attacking Bradford Claim No. 3, and Contest No. 2478, attacking Bradford No. 1. The contestees answered and issues were joined on the contest complaints and answers thereto.

4. On June 4, 1954, plaintiffs filed with the Bureau of Land Management an application for mineral patent, Serial No. Nev–125248, embracing the lands included in the Bradford No. 1, No. 2 and No. 3 claims. On January 19, 1955, the Bureau of Land Management ordered publication of the application for patent. On April 4, 1955, the Bureau of Land Management collected $1,600.00 from plaintiffs as the statutory purchase price for the patent to the claims. In response to the publication of the application for patent, an adverse claim against those portions of Bradford No. 1 and Bradford No. 2 included in the E½ of E½ of Section 32 was filed. The adverse claimants instituted suit in the Eighth Judicial District Court of the State of Nevada, in and for the County of Clark. The action was terminated by consent decree adjudging the adverse

claimants to be the owners of unpatented claims embracing the E½ of SE¼ of Section 32 and plaintiffs to be the owners of the unpatented claims embracing the remainder of the property affected by the adverse claim.

5. On October 2, 1953, the Bureau of Land Management, exercising its powers respecting the classification of public lands for entry and disposition under the public land laws, classified Section 32, T. 22 S., R. 61 E., among other lands in Clark County, Nevada, as suitable for disposition under the small tract law for residential use.

6. On December 9, 1954, plaintiffs posted and recorded amended notices of location for the three Bradford claims for the purpose of gaining the benefits of the acts of August 12, 1953 and August 13, 1954 (30 U.S.C. §§ 501 and 521).

7. Commencing on November 30, 1954, a consolidated hearing was held before a Hearing Officer of the Bureau of Land Management on the contests No. 2746, 2477 and 2478, initiated by the Bureau against Bradford Claims No. 1, No. 2 and No. 3. Plaintiffs were represented and participated, as did a number of intervenors claiming an interest as small tract applicants. Although plaintiffs' application for mineral patent No. Nev–125248, was not formally consolidated for hearing with the contest complaints, plaintiffs, by their answers, had alleged the status of the patent proceedings as a defense to the contests, the record of the patent proceedings was received in evidence, and the right of plaintiffs to the issuance of a mining patent to the lands in question has been consistently treated as being in issue throughout the administrative procedure.

8. With respect to the issues made in the contest proceedings that the lands covered by the mining claims were non-mineral in character and that minerals had not been found in sufficient quantities or quality to constitute a valid discovery, the evidence proved, among other things, that sand and gravel mining locations had been made aggregating 800 to 1,000 in number and encompassing approximately 150 to 175 sections of public lands in Las Vegas Valley, Clark County, Nevada, and that the sand and gravel in the Bradford Claims was generally similar in character and quality to that in the other 150 or more sections of land on which similar claims had been located.

9. There was no evidence that the Bradford Claims, or any of them, were currently being worked or mined or that raw or processed material therefrom was currently or had recently been regularly produced and marketed.

10. The decision of the Hearings Officer was made April 7, 1955. He sustained the contests against Bradford No. 3 (NW¼, Sec. 32), and a portion of Bradford No. 1 (NW¼ NE¼ Sec. 32), upon the ground that the existing oil and gas lease No. 023272 removed such property from further mineral entry. This ruling was affirmed throughout all subsequent appeal and review proceedings and by the final decision of the Secretary of the Interior. The Hearings Officer found that Bradford No. 2 and the remainder of Bradford No. 1 (not encumbered by the oil and gas lease) were valid mining claims under the established rules governing proof of discovery of valuable non-metallic minerals. The Hearings Officer stated that the burden was on the Government to sustain its contest complaints by a preponderance of the evidence.

11. Both plaintiffs and the intervenors appealed the decision of the Hearings Officer to the Director of the Bureau of Land Management. By his decision dated March 9, 1957, the Director sustained the decision respecting the lands covered by the oil and gas lease holding that the amended notices of location posted and recorded by plaintiffs on December 9, 1954 were not timely and were ineffectual to invoke the benefits of the Acts of Congress of August 12, 1953 and August 13, 1954. The Director also suspended decision respecting the re-

mainder of the claims pending final decision in the adverse action which had been brought in the Nevada District Court (See Finding 4).

12. Plaintiffs appealed to the Secretary of the Interior from the decision of the Director dated March 19, 1957. The decision of the Director was affirmed by the Secretary on May 16, 1958. This was the final agency action on the issue raised by the pre-existing oil and gas lease.

13. On March 8, 1959, the judgment of the Eighth Judicial District Court of the State of Nevada was recorded, resolving the conflicting possessory rights of plaintiffs and the adverse claimants as stated in Finding 4. On July 27, 1960, the Director of the Bureau of Land Management entered a supplementary decision in which he reversed in toto the decision of the Hearings Officer dated April 7, 1955, ruling: "Since the sand and gravel from these claims cannot be extracted, removed and presently marketed at a profit, the Bradford Nos. 1 and 2 Placer Mining Claims are null and void in their entireties. The Examiner's decision is reversed and mineral patent application Nevada 025248 is rejected."

14. The decision of the Director, dated July 27, 1960, was appealed by plaintiffs to the Secretary of the Interior who, on October 23, 1961, affirmed the Director's decision with respect to the three mining claims here involved. The Secretary held:

"The evidence upon which the Director based his finding that the claims are without validity, set forth in the Director's decision, fully supports his finding. The locators of these two claims have not met the test of showing that these minerals of wide occurrence, because of the accessibility of the deposits, *"bona fides* in development, proximity to market, and the existence of a present demand for the sand and gravel can be mined, removed, and disposed of at a profit. Without such a showing on the part of the locators, it was proper for the

Director to declare the claims to be null and void. Foster v. Seaton, [106 U.S.App.D.C. 253] 271 F.2d 836 (1959)."

15. The instant action, a Complaint for Injunction and Declaratory Relief, was filed November 22, 1961, seeking to set aside the decision of the Secretary of Interior and compel the issuance of a patent to the mining claims. Only one Harold C. Hammit, Manager of the Nevada Land Office, Bureau of Land Management, Department of the Interior, is a defendant herein.

16. The decisions of the Secretary of the Interior are supported by substantial evidence.

## OPINION

The conclusions of law of the Court will be included in this Opinion, and to the extent that they are factual in character, or constitute statements of mixed law and ultimate fact, shall be deemed additional findings of fact.

### Decree in Adverse Suit

1. The E½ of the SE¼ of Section 32, T. 22 S., R. 61 E. (the E½ of Bradford No. 2 Claim) has been conclusively eliminated from plaintiffs' claims by the consent decree in the adverse suit in the Eighth Judicial District Court of the State of Nevada, in and for the County of Clark.

### Effect of Oil and Gas Lease

2. The NW¼ of Section 32 (Bradford No. 3 Claim) and the NW¼ of the NE¼ of Section 32 (NW¼ of Bradford No. 1 Claim) were legally and properly held null and void by the Secretary of the Interior because the evidence shows, without contradiction, that this property was the subject of an existing oil and gas lease at the time of plaintiffs' attempted entry under the mining laws. The granting of the oil and gas lease by the Bureau of Land Management had the effect of withdrawing the area leased from entry under the mining laws and of invalidating ab initio any mining claim locations attempted to be

made during the existence of the lease. Schaub v. United States ( 9 CCA 1953), 14 Alaska 412, 207 F.2d 325; Thomas v. Union Pacific Railroad Company (D.C. Colo.1956), 139 F.Supp. 588. Congressional intent that lands subject to a permit or lease under the mineral leasing laws be considered as withdrawn from location under the mining laws is also demonstrated by the Act of August 12, 1953, adopted to provide a procedure for validation of mining claims theretofore located in conflict with such a mineral lease or permit (30 U.S.C. § 521). That statute permitted a relocation of the mining claim within one hundred twenty days after August 13, 1953 by posting and recording an amended notice of location. Plaintiffs here did not comply with the statute, but on August 13, 1954, an Act relating to the multiple mineral development of public lands (30 U.S.C. § 521) was approved which reaffirmed the requirements of 30 U.S.C. § 501 with respect to mining claims located prior to January 1, 1953 and, with respect to mining claims located after December 21, 1952 and prior to February 10, 1954, granted the locators 120 days after August 13, 1954 to post and record amended notices of location in order to gain the benefits of the Act. Plaintiffs here did record and post amended notices of location of the Bradford claims on December 9, 1954.

Inasmuch as the Bradford claims were originally located on June 23, 1952 (prior to January 1, 1953), it is evident that under the clear and unambiguous terms of the Acts of Congress of August 12, 1953 and August 13, 1954, the amended location notices must have been posted and recorded within 120 days after August 12, 1953 for the plaintiffs to have gained the full benefits of the statutes, thereby removing the conflict with the pre-existing oil and gas lease.

It should not be forgotten, however, that the obvious primary purposes of the Act concerning the multiple mineral development of the same tracts (30 U.S. C. § 521 et seq.) was to eliminate the previous rule that the granting of a mineral lease effected a withdrawal of the land from mineral entry for appropriation of other than leasing act minerals, and to permit concurrent exploitation of the same public lands by mineral lease of leasing act minerals and by location of mining claims for minerals appropriable under the general mining law.

Until July 23, 1955 (30 U.S.C. § 601; 69 Stat. 367), valuable deposits of sand and gravel were locatable mineral under the general mining laws. True, the recordation of amended notices of location by plaintiffs on December 9, 1954 was too late to gain the benefits of the retroactive provisions of the Acts of August 12, 1953 and August 13, 1954. We perceive no reason, however, why they cannot be considered valid relocations of the claims entitled to recognition and validity if other requirements are met. On December 9, 1954, although plaintiffs' earlier locations were void because of the conflicting oil and gas lease, such lease had expired and a third person might have claimed the land for sand and gravel by complying with all legal requirements. There is no reason why plaintiffs might not do so.

*Effect of Small Tract Classification*

3. Even so, we must consider the effect of the order of October 2, 1953 classifying all of Section 32 as suitable for small tracts. The statute provides: (43 U.S.C. § 682 et seq.)

"Sec. 682a. Sale or lease of small tracts for residence, recreation, business, or community site purposes

"The Secretary of the Interior, in his discretion, is authorized to sell or lease to any person or organization described in section 682c of this title a tract of not exceeding five acres of any vacant, unreserved public lands, public lands withdrawn by Executive Orders Numbered 6910 of November 26, 1934, and 6964 of February 5, 1935, for classification, or public lands withdrawn or reserved by the Secretary of the Interior for any purposes, which the Secretary may classify as chiefly valuable for residence, recrea-

tion, business or community site purposes, if he finds that such sale or lease of the lands would not unreasonably interfere with the use of water for grazing purposes nor unduly impair the protection of watershed areas, in reasonably compact form and under such rules and regulations as he may prescribe, at a price to be determined by him, for such use: *Provided*, That no land may be sold hereunder unless it has been surveyed. No person or organization shall be permitted to purchase or lease more than one tract under the provisions of sections 682a–682e of this title, except upon a showing of good faith and reasons satisfactory to the Secretary. June 1, 1938, c. 317, § 1, 52 Stat. 609; [amended] July 14, 1945, c. 298, 59 Stat. 467; June 8, 1954, c. 270, 68 Stat. 239."

"Sec. 682b. Same; minimum selling price; reservation of mineral rights

"No tract shall be sold for less than the cost of making any survey necessary to describe properly the land sold. Patents for all tracts purchased under the provisions of sections 682a–682e of this title shall contain a reservation to the United States of the oil, gas, and all other mineral deposits, together with the right to prospect for, mine, and remove the same under applicable law and such regulations as the Secretary may prescribe. June 1, 1938, c. 317, § 2, as added June 8, 1954, c. 270, 68 Stat. 239."

Regulations have been promulgated pursuant to the Act. Among them, 43 C.F.R. 257.3, approved January 15, 1955, provides:

"Sec. 257.3 Classification of land.

"(a) No lease will be issued or sale authorized prior to classification of land for such purpose. If the tract is found not suitable for such purpose, the application will be rejected.

"(b) Lands classified under the act of June 1, 1938, as amended, will be segregated from all appropriations, including locations under the mining laws, except as provided in the order of classification or in any modification or revision thereof."

"Sec. 257.16 Minerals; timber.

"(a) Any lease or patent issued under the act will reserve to the United States all deposits of coal, oil, gas, or other minerals, together with the right of prospect for, mine, and remove the same under such regulations as the Secretary may prescribe. Any minerals subject to the leasing laws in the lands patented or leased under the terms of the act may be disposed of to any qualified person under applicable laws and regulations in force at the time of such disposal. Until rules and regulations have been issued, the other kinds of minerals that may be found in such lands are not subject to prospecting or disposition."

█■ We are advised that no similar regulations had been promulgated prior to 1955 and no such regulations were in effect on October 2, 1953 at the time these lands were classified for small tract entry. The Interior Department has not decided the question of the validity of a mining claim located before the adoption of Regulation 257.3 which conflicts with a small tract classification. Harry E. Nichols, et al., L.D. #A–28463 decided February 27, 1961. It is nevertheless, the view of this Court that a classification by the Secretary of lands for small tract entry serves to segregate the lands from mineral entry and invalidates ab initio any mining claim located after the small tract classification order. The statute (43 U.S.C. § 682b, supra) provides for a reservation of minerals in patents issued for small tracts, such minerals to be subject to appropriation under proper regulations prescribed by the Secretary. It would be completely disruptive of an orderly and proper disposition of small tracts if intervening mining locations of non-metalliferous minerals should be given priority over the small tract classification order. After the classification order, a

mining entry may be made only in accordance with regulations prescribed by the Secretary. The classification of the lands for small tract entry was, in effect, a withdrawal of the lands under the authority of 43 U.S.C. § 141 and Executive Order No. 10355 which authorize the Secretary to withdraw lands from "settlement, location, sale or entry" and to "reserve the same for . . . classification of lands." The proviso of 43 U.S.C. § 142, preserving rights of exploration and purchase for metalliferous minerals, does not preserve a right to locate withdrawn lands for sand and gravel.

We conclude, therefore, that the order of the Department of Interior of October 2, 1953 classifying the instant lands for purchase under the small tract laws effectively prevented a valid relocation of the Bradford Claims for sand and gravel on December 9, 1954.

### Failure to Seek Review of Secretary's Decision of May 16, 1958

4. The final agency action with respect to the NW¼ of Sec. 32 (Bradford No. 3 Claim) and the NW¼ of NE¼ Section 32 (NW¼ of Bradford No. 1 Claim) is represented by the decision of the Secretary of Interior dated May 16, 1958. The plaintiffs have not directly attacked this decision in their complaint, but seek, rather, to invalidate the Secretary's decision of October 23, 1961. The Court is justified in inferring that the plaintiffs do not complain of the agency ruling with respect to the areas affected by the conflicting oil and gas lease.

### Effect of Patent Proceedings

5. The government initiated contests of the Bradford Claims on June 10, 1953. On June 4, 1954 plaintiffs applied for mineral patent. The hearing in the contests before the examiner was held in November, 1954. On January 19, 1955 the Bureau of Land Management ordered publication of the application for patent and on April 4, 1955 collected $1,600 from plaintiffs. On April 7, 1955, the Hearings Officer made his decision in the contest proceedings, subject to review on appeal. Plaintiffs argue that the publication, the application for patent and the acceptance of the money vested equitable title in plaintiffs as against the government, and in effect, compelled the issuance of a patent after other formal procedural requirements had been fulfilled. This is not the law. Adams v. United States, 9 CCA 1963, 318 F.2d 861. Cameron v. United States, 252 U.S. 450, 40 S.Ct. 410, 64 L.Ed. 659. Plaintiffs acquired no vested title, either legal or equitable, to the mining claims by virtue of the ordered publication in the patent proceedings and the provisional acceptance of the purchase price.

Fundamentally, there is no inconsistency in the public land regulations between the procedure to obtain a mining patent (43 C.F.R. Part 185, subpart D), and the general regulations governing government contests (43 C.F. R. Part 221; 221.67, et seq.). It is the latter group of regulations which permit the government to initiate a contest of the validity of a mining location, regardless of whether or not an application for a patent is pending, and there is no specific provision in the regulations governing the patenting procedure which contemplate such a contest, except by reference to Part 221 (43 C.F.R. 185.87). The purpose of the publication of notice in patent proceedings (43 C.F.R. 185.56) is to give third persons, possible adverse claimants, notice and an opportunity to establish their adverse claims by plenary suit. It has nothing to do with the possible invalidity of the mining location for lack of discovery of valuable mineral. So long as the applicant for the mining patent is agreeable, we see no objection to publishing notice to adverse claimants while the contest proceedings are in progress and undetermined. Any step toward eliminating the long delays in government land office procedures should be commended rather than criticized. In this particular case had the contest proceedings turned out differently for plaintiffs, the delay incident to

the publication of notice in the patent proceedings and the settlement of the adverse claim which did ensue therefrom, would have been greatly minimized. If criticism is desirable, we think in this case it should be directed toward the Department of Interior for suspending action in the contest proceedings pending determination of the adverse claim. There is no good reason why the two proceedings should not have gone forward simultaneously. They involved entirely different issues, and an unconscionable delay was the consequence of the suspension of the administrative procedure in the contest proceedings.

### Findings of Hearings Officer

6. The Hearings Officer, Robert T. Felton, found in favor of plaintiffs with respect to the question of discovery, holding that there had been a discovery of valuable mineral, i. e., sand and gravel. This finding was reversed by the Director of the Bureau of Land Management and his decision was affirmed by the Secretary. Plaintiffs bitterly complain that such reversal of the Hearings Officer was on its face arbitrary.

■ The findings of the Hearings Officer assumed the improper premise that the burden was on the government to sustain the invalidity of the claims. The law is to the contrary. Although the statute (5 U.S.C. § 1006(c) imposes the burden of proof on the proponent, the government, as contestee, is not the proponent. The proponent is the person who initiates the entry on the public lands, in this instance the locators of the mining claims. Foster v. Seaton, 1959, 106 U.S.App.D.C. 253, 271 F.2d 836.

■ Further, under the Administrative Procedures Act the findings of a Hearings Officer or trial examiner are advisory only and are to be taken into consideration together with all the evidence to determine the legality of the final agency action. "The agency shall . . . have all the powers which it would have in making the initial decision." (5 U.S.C. § 1007(a)). The findings of the Hearings Officer are weightless. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. We cannot find arbitrary and illegal agency action simply because the final agency authority reversed the examiner's findings.

### Discovery of Valuable Mineral

■ 7. The appropriation under the mining laws of nonmetallic substances of common occurrence has caused burdensome problems. The Bradford Claims were located for sand and gravel in Las Vegas Valley, Clark County, Nevada, containing unlimited deposits of this material for which in excess of 800 mining claims had been filed, encompassing 100,000 or more acres.

The mining laws permit the occupation and purchase of public lands on which "valuable mineral deposits . . . are found." (30 U.S.C. § 42). A discovery of valuable mineral is essential to a valid mining location. A respectable authority, Anchorage Sand & Gravel v. Schubert, 1953, 14 Alaska 403, 114 F.Supp. 436, rejected a sand and gravel location under similar circumstances by holding that there could be no "discovery," within the meaning of the mining laws, of material of such readily observable and widespread occurrence. The government attorneys expressly disclaim reliance upon such a ruling here. We observe, nevertheless, that a like concept was relied upon by the Secretary (U. S. v. Henrikson, 70 I.D. 212 (1963)) sustaining the validity of one sand and gravel placer claim and rejecting another, and was affirmed by the reviewing court (Henrikson v. Udall, (D.C.Cal. 1964, 229 F.Supp. 510). In the Henrikson case the decision, rather than holding that there could be no discovery of such a material, emphasized the lack of working and exploitation of the material to discount discovery.

With respect to base materials the test of Castle v. Womble, 19 L.D. 455 defining a valuable mineral has been re-

fined. (Foster v. Seaton, 1959, 106 U. S.App.D.C. 253, 271 F.2d 836):

" . . . With respect to widespread nonmetallic minerals such as sand and gravel, however, the Department has stressed the additional requirement of present marketability in order to prevent the misappropriation of lands containing these materials by persons seeking to acquire such lands for purposes other than mining. Thus, such a 'mineral locator or applicant, *to justify his possession, must show that by reason of accessibility, bona fides in development, proximity to market, existence of present demand,* and other factors, the deposit is of such value that it can be mined, removed and disposed of at a profit.' Layman v. Ellis, 54 I.D. 294, 296 (1933), emphasis supplied. See also Estate of Victor E. Hanny, 63 I.D. 369, 370–72 (1956). . . ."

We think the Secretary was right in holding the proofs insufficient here to establish present marketability under the quoted standards. If we were to judge the case solely on the basis of the conflicting evidence bearing upon the theoretical marketability of the sand and gravel from the Bradford Claims, we would be inclined to agree with the Hearings Officer rather than the Secretary inasmuch as the government witness, William L. Shafer, although well qualified as a mining engineer, had few, if any qualifications in experience and knowledge to testify concerning the market for the material in the Las Vegas area, and the costs of extraction and processing. But the record discloses a situation where, if the Bradford Claims could be sustained on the hypothetical and speculative opinion evidence relied upon by the plaintiffs, each of the claims in the valley comprising over 100,000 acres might be separately validated on the same sort of theoretical evidence. The end result would be that 100,000 acres of public lands would have been patented as valuable for mining, where it is evident and shown by the record that not more than one percent of the material might have been marketable in the reasonably foreseeable future.

The mining laws of the United States are quite beneficent. A prospector may occupy public lands and mine and remove materials therefrom for his personal profit by his own ex parte action, without so much as a "by-your-leave" from any person or public official. If the locations of the Bradford sand and gravel claims were made in good faith under a genuine belief of the present profitable marketability of the product, there is no reason why plaintiffs should not have commenced the removal and processing of the material in 1952 and continued the profitable enterprise through 1954, when the hearing was held. If they had done so, their claims would, perforce of law, have been sustained. Their failure to do so beclouds the reliability and evidentiary weight of the case presented by them.

We do not discount the value of opinion evidence from qualified witnesses in cases dealing with fairly unique deposits of locatable minerals. This case is different. Sand and gravel of the same general quality found in the Bradford Claims is readily available in thousands of adjoining acres. The burden of the proponent, plaintiffs here, is not simply to preponderate in the evidence produced, its burden is to produce a preponderance of *credible* evidence, and the trier of fact is not required to believe or to give weight to testimony which is inherently incredible. It is apparent from the evidence that if, in June 1952, owners of other claims near Las Vegas had commenced to produce and market sand and gravel from their properties, such action would have filled the theoretical void in the supply of the material to the Las Vegas market, rendering the Bradford Claims valueless. The plaintiffs failed to enter the race to supply the theoretical insufficiency of production of sand and gravel. If they had done so successfully, they would have satisfied the requirements of Foster v. Seaton (supra) by proving bona fides of development and present demand. Their fail-

ure so to act contradicts the speculative, hypothetical and theoretical testimony on which they rely.

### DECISION

The Court holds that the Secretary of Interior did not act arbitrarily or unreasonably, that the administrative procedures followed were in accordance with due process of law, that the final agency action is supported by substantial evidence, that Bradford No. 1, Bradford No. 2 and Bradford No. 3 Mining Claims are null and void, and that defendant Harold C. Hammit, as Manager of the Nevada Land Office, Bureau of Land Management, Department of Interior, United States of America, and his successors in office, should not be enjoined or restrained from carrying into effect the Decision of the Secretary of Interior dated May 16, 1958 and the Decision of the Secretary of Interior dated October 23, 1961 in U. S. v. R. R. Borders, J. R. Osborne, et al., Nos. A–27493 and A–28624, Department of Interior.

Defendant shall prepare and present a form of judgment accordingly.