Argued November 7, decided December 13, 1910.

## LONEY v. SCOTT.

[112 Pac. 172: 32 L. R. A. (N. S.) 466.]

MINES AND MINERALS—LANDS OPEN TO LOCATION—WITHDRAWALS.

1. Under Act Congress June 17, 1902, c. 1093, § 3, 32 Stat. 388 (U. S. Comp. St. Supp. 1909, p. 597), directing the Secretary of the Interior (1) to withdraw from entry the lands for any irrigation works contemplated by the act, and (2) authorizing him to withdraw any lands believed to be susceptible of irrigation from such works, withdrawals under the first clause are not subject to location for mining purposes, being reserved for government use, while lands withdrawn under the second clause are disposed of only for homesteads, and as all lands open to homestead entry are subject to mining location, lands withdrawn under the second clause are so subject.

MINES AND MINERALS—PATENTS—OPERATION—MINERAL DEPOSITS.

2. A patent to government land transfers to the patentee all veins, lodes, or other minerals within its boundaries, unless such mineral deposits were known to exist at the time of the issuance of the patent, in which case the known mineral deposits do not pass by the patent.

MINES AND MINERALS—PUBLIC MINERAL LANDS—STATUTES—BUILDING SAND A "MINERAL."

3. Under Rev. St. § 2329 (U. S. Comp. St. 1901, p. 1432), by which claims usually called placers, including all forms of deposits excepting veins of quartz or other rock in place, shall be subject to entry, building sand is a mineral; and, hence, land more valuable for the building sand it contains than for agriculture is mineral land, subject to placer locations.

MINES AND MINERALS—LOCATIONS—PATENTS—RELIEF FROM CLOUD ON LAND.

4. The plaintiff had located placer claims upon public land while it was suspended from entry and had remained in possession working the claims, and when the land was reopened to entry, defendant's grantor, a railroad company, obtained a patent for the land as lieu land under its grant. Held that, if a patent to lands to which one is entitled has been improperly issued by the government to another, the state courts will quiet the title by adjudging the patentee a trustee of the title for him, but to warrant such a decree, plaintiff must show that he is entitled to the patent or that the title should have been awarded to him, and hence, the plaintiff was without right to have the defendant adjudged a trustee for him.

PUBLIC LANDS—MINERAL DEPOSITS—LOCATION OF PLACER CLAIMS— RIGHT TO POSSESSION.

5. The plaintiffs made placer locations upon public lands while they were withdrawn from entry and gave the notices as required by law. After the reopening of the land to entry, the defendant's grantor, a railroad company, obtained a patent to the land as lieu land under its land grant, defendant making the non-mineral affidavit, which showed the land to be in fact mineral in character and that it was claimed under placer filings, and after conveyance to him defendant sued the placer claimants for possession. Held, that the possession of the plain-

tiffs as placer claimants at the time of the application of the defendant for a patent was sufficient to defeat defendant's action for possession, and that plaintiffs might enjoin defendant's action.

From Umatilla: HENRY J. BEAN, Judge.

Statement by MR. JUSTICE EAKIN.

This is a suit by Samuel Loney, John B. Knight, Elmer B. Knight and Mary Knight, against Joseph C. Scott, and involves the right to the possession and ultimate ownership of three placer mining claims situated in the northwest portion of Umatilla County.

The N. W. ¼ of the N. E. ¼, and the N. E. ¼ of the N. W. ¼, Section 8, Tp. 5 N., R. 30 E., W. M., in Umatilla County, which includes the land in controversy in this suit, together with 183 sections of adjacent lands, was by the Secretary of the Interior, on August 16, 1905, temporarily withdrawn "from any form of disposition whatever under the first form of withdrawal" for irrigation works in connection with the Umatilla project, as provided in section 3 of the act of June 17, 1902, c. 1093, 32 Stat. 388 (U. S. Comp. St. Supp. 1909, p. 597). Section 3 of that act provides for two classes of withdrawals: (1) "The Secretary of the Interior shall * * withdraw from public entry the lands required for any irrigation works contemplated under the provisions of this act." (2) He is authorized to "withdraw from entry * * any public lands believed to be susceptible of irrigation from said works." Those withdrawn under the first form are lands that may possibly be needed in the construction and maintenance of irrigation works, while those included in the second form are lands which may possibly be irrigated from such works.

The land in controversy here was by order of the Secretary of the Interior restored to public entry on March 2, 1907. On January 7, 1907, the plaintiffs, the Knights, attempted to locate three placer mining claims in Section 8, Tp. 5 N., R. 30 E., W. M., in Umatilla

County, Oregon, adjacent to and parallel with the right of way of the Oregon Railway & Navigation Company through that section; these claims being the land in controversy. They posted a notice of location upon each of the claims and staked the same in the manner required by law—1500 by 600 feet. Placer claim No. 1 is described as in Section 8, Tp. 5, Range 30 N., W. M., "commencing at corner stake No. 1 at the south boundary line of the right of way of the O. R. & N. Co., thence," etc. The other two claims are described by reference to No. 1. The notices were duly recorded in the records of Umatilla County, Oregon.

Plaintiffs also allege the performance of assessment work each year on each claim, as required by law, and the conveyance by the Knights to plaintiff Loney of an undivided one-third interest in the claims. It is further alleged that the claims are valuable for the mineral they contain, viz., large deposits of building sand and placer deposits of gold. It also appears that, under the provisions of certain acts of Congress, passed in the years 1864 and 1870, a patent was issued by the United States to the Northern Pacific Railway Company, dated March 19, 1908, for the N. W. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$, and the N. E. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$, Section 8, Tp. 5 N., R. 30 E., W. M., as a lieu land selection, and on May 15, 1908, the railway company conveyed the same to defendant; that about one-half of placer claim No. 2, and about two-thirds of claim No. 3 are situated upon the 80 acres above described. Defendant relies upon the United States patent to the railway company and his deed from the railway company as evidencing his title, and further contends that plaintiff could not make a valid location of the mining claim while the land was withdrawn from entry; also, that sand is not such a mineral as can be the subject of a mining location; that, conceding all that plaintiffs claim, they have no standing in equity, for

the reason that defendant's patent cannot be attacked by them, unless they have a right to the title from the United States.

Defendant Joseph Scott on June 8, 1907, made the nonmineral affidavit, required under the United States statute, upon the application of the railway company for the land, in which he says:

"That there is not, within the limits of said land, any known vein or lode of quartz or other rock in place bearing gold, silver, * *; that there is not, within the limits of said land, any known deposit of coal, or any known placer deposit, oil, or other valuable mineral; * * that no portion of said land is claimed for mining purposes under the local customs or rules of miners or otherwise, except that part of said land is claimed under placer filings, which said filings do not state what minerals said lands contain; that said land is essentially nonmineral in character, unless sand suitable to be used in building constitutes a mineral."

The railway company made its application to the United States Land Office for the land on June 12, 1907, being the first day on which such application could be made after the land was restored to entry.

The defendant brought an action against plaintiffs for the possession of the land, and they filed this complaint as a cross-bill in such action, in which they ask that the law action be permanently stayed, and that the legal title which defendant has to that portion of the premises embraced in the mining claims be decreed to be held by him in trust for plaintiffs herein.   Decree was rendered for plaintiffs, and defendant appeals.        MODIFIED.

For appellant there was a brief over the names of *Messrs. T. P. & C. C. Gose* and *Messrs. Carter & Smythe,* with oral arguments by *Mr. C. C. Gose* and *Mr. Charles H. Carter.*

For respondents there was a brief over the names of *Mr. John H. Pedigo, Messrs. Lowell & Winter* and *Mr.*

*Gilbert W. Phelps,* with oral arguments by *Mr. Lowell* and *Mr. Phelps.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. There are several important questions involved in determining plaintiff's right to relief in this suit. First: It is contended by defendant that plaintiffs could not make a valid location upon land withdrawn from settlement. Withdrawals for forest reserves expressly reserve to the prospector all mineral deposits for mining exploration and location; but withdrawals made by the Secretary of the Interior, under the act of June 17, 1902, c. 1093, 32 Stat. 388 (U. S. Comp. St. Supp. 1909, p. 597), providing for irrigation projects, if made under the first form, that is, for "irrigation works," are not subject to mining locations, as they are intended, as permanent reservations for governmental use, and amount to a legislative withdrawal. *Frisbie* v. *Whitney,* 9 Wall. 187 (19 L. Ed. 668) ; *Yosemite Valley Case,* 15 Wall. 77 (21 L. Ed. 82) ; *Shepley* v. *Cowan,* 91 U. S. 330, 338 (23 L. Ed. 424). While lands withdrawn under the second form, viz., for irrigation purposes under such project, are disposed of thereunder only for homesteads, and all lands open to homestead settlement are also open to exploration and location for mineral deposits. 35 Land Dec. Dept. Int. 216; *Albert M. Crafts,* 36 Land Dec. Dep. Int. 138. The language of section 3 of the act under consideration, relating to withdrawals under the first form, provides that the Secretary of the Interior "shall restore to public entry any of the lands so withdrawn when in his judgment such lands are not required for the purposes of this act." There were withdrawn, under this provision, for irrigation works, about 183 sections, which may be reasonably presumed to be far in excess of what may be required for that purpose, and portions thereof, including the land above described, were, in

fact, soon thereafter restored to the public domain, while, plaintiffs were in possession of the placer claims. It. appears that the Interior Department, under a former statute, providing for withdrawals for irrigation projects, which provides that the reservoir shall be restricted to and contain only so much land as is actually necessary for its construction, held that a mineral entry, based on a location made after withdrawal of the land for a reservoir site, conferred no right, but may be suspended, and, if subsequently restored to entry, the location may proceed to patent. See, also, *Prescott & Arizona Central Ry. Co.*, 13 Land Dec. Dep. Int. 47; *Newton F. Austin*, 18 Land Dec. Dep. Int. 4; *Noonan* v. *Caledonia Min. Co.*, 121 U. S. 393 (7 Sup. Ct. 911: 30 L. Ed. 1061.)

2. But we do not deem it necessary to determine that question as, under the view we take of the case, the possession by plaintiffs of the ground as mining claims, at the time of the application by the railway company for a patent therefor, is sufficient to defeat its action for possession. The rule is, that a patent to government land transfers to the patentee all veins, lodes, or other minerals, within its boundaries, unless such mineral deposits were known to exist at the time of the issuance of the patent, in which latter case the known mineral deposits do not pass by the patent. *Reynolds* v. *Iron Silver Mining Co.*, 116 U. S. 687 (6 Sup. Ct. 601: 29 L. Ed. 774) ; *Davis' Adm'r* v. *Weibbold*, 139 U. S. 507 (11 Sup. Ct. 628: 35 L. Ed. 238) ; *Kansas City Mining & Milling Co.* v. *Clay*, 3 Ariz. 326 (29 Pac. 9) ; *State of Colorado*, 6 Land Dec. Dep. Int. 412; *Abraham L. Miner*, 9 Land Dec. Dep. Int. 408; *Virginia Lode*, 7 Land Dec. Dep. Int. 459.

In *Reynolds* v. *Iron Silver Mining Co.*, a case in which a patent had issued for a placer mine upon which there was a quartz ledge, known at the time to the patentee, it is said, that the title to the quartz mine remained in

the United States and no title passed to the patentee. "He takes his surface land and his placer mine, and such lodes or veins of mineral matter within it as were unknown, but to such as were known to exist he gets by that patent no right whatever. The title remaining in his grantor, the United States, to this vein, the existence of which was known, he has no such interest in it as authorizes him to disturb any one else in the peaceable possession and mining of that vein. When it is once shown that the vein was known to exist at the time he acquired title to the placer, it is shown that he acquired no title or interest in that vein by his patent. Whether the defendant has title, or is a mere trespasser, it is certain that he is in possession, and that is a sufficient defense against one who has no title at all and never had any." The same language is used in *Davis' Adm'r* v. *Weibbold,* 139 U. S. 516 (11 Sup. Ct. 628: 35 L. Ed. 238), where it is held that the patent does not pass the title to known mineral land.

3. In the case before us it is conceded that, if building sand is mineral, within the meaning of Section 2329 of the U. S. Rev. St. (U. S. Comp. St. 1901, p. 1432), the railway company and defendant knew, at the time the patent was applied for, that the land contained mineral. This is shown by the nonmineral affidavit of Scott, quoted above, expressly referring to the fact that part of the ground is claimed under placer filings, and, therefore, the title to the mineral ground did not pass by the patent, and defendant Scott has no standing to maintain ejectment against plaintiffs.

The question arises whether building sand is a mineral, within the mineral laws of the United States. The language of Section 2329 is:

"Claims usually called 'placers,' including all forms of deposits, excepting veins of quartz, or other rock in place, shall be subject to entry."

Plaintiffs' proof tends to show that building sand is a valuable mineral, viz., worth 50 cents per cubic yard, and is marketable in large quantities. George Otis Smith, the director of the United States Geological Survey, in volume 2 of his Report of the Mineral Resources of the United States, for 1907, at page 563, by a tabulated statement shows that more than $5,000,000 worth of building sand had been produced in the United States in 1906, and as great a value in 1907.

In *Northern Pac. Ry. Co.* v. *Soderberg,* 188 U. S. 526, 534 (23 Sup. Ct. 365, 368: 47 L. Ed. 575), the court, in discussing whether granite comes within the term, "mineral deposit," say: "The words, 'valuable mineral deposits' (as used in Section 2319, U. S. Rev. St. [U. S. Comp. St. 1901, p. 1424]) should be construed as including all lands chiefly valuable for other than agricultural purposes, and particularly as including nonmetallic substances [naming a list, and continuing]. We do not deem it necessary to attempt an exact definition of the word 'mineral lands' as used in the act of July 2, 1864 [Act June 2, 1864, c. 217, 13 Stat. 365]. With our present light upon the subject it might be difficult to do so. * * Indeed, we are of the opinion that this legislation consists with, rather than opposes, the overwhelming weight of authority to the effect that mineral lands include, not merely metalliferous lands, but all such as are chiefly valuable for their deposits of a mineral character, which are useful in the arts or valuable for purposes of manufacture." This definition seems broad enough to include building sand, and we are of the opinion that land more valuable for the building sand it contains than for agriculture is subject to placer location, and is mineral within the meaning of the United States mining statutes.

4. The decree of the lower court, however, in addition

Sig. 13

to restraining defendant from prosecuting the law action, adjudges "that the legal title which the defendant herein has to said portion of said premises embraced within the said three mining claims is held by the defendant in trust for the plaintiffs herein." This evidently is intended to be an adjudication that plaintiffs have established a right to the title to the claims, but they have not shown themselves entitled to this relief.

If a patent to land to which one is entitled, has been improperly issued by the United States to another, the State courts will quiet the title of the former or adjudge the other a trustee of the title for him. *Wardwell* v. *Paige,* 9 Or. 517; *Bohall* v. *Dilla,* 114 U. S. 47 (5 Sup. Ct. 782: 29 L. Ed. 61) ; *Hartman* v. *Warren,* 76 Fed. 157 (22 C. C. A. 30) ; *Baldwin* v. *Keith,* 13 Okl. 624 (75 Pac. 1124) ; *Graham* v. *Great Falls, W. P. & T. Co.,* 30 Mont. 393 (76 Pac. 808) ; *Sparks* v. *Pierce,* 115 U. S. 408 (6 Sup. Ct. 102: 29 L. Ed. 428). But to entitle one to a decree, adjudging another who holds under a patent from the United States to be a trustee for the former, he must show that he, himself, is entitled to it, or show that, by the law properly administered, the title should have been awarded to him. See the cases cited last above.

5. The result or these conclusions is, that the lands included in the placer claims are mineral and subject to location as such; that defendant and his grantor knew of its mineral character at the time the patent was applied for; that they acquired no title thereto, but the title remained in the United States; that, at the time the action of ejectment was commenced by defendant, plaintiffs were in possession of the placer claims, working the same as a mine and seeking to acquire title thereto as such from the United States; that defendant, having no title thereto, cannot maintain an action of ejectment therefor, against plaintiffs, who are rightfully in possession thereof. *Morrison* v. *Stalnaker,* 104 U. S.

213 (26 L. Ed. 741); *Johnson* v. *Drew*, 34 Fla. 130 (15 South. 780: 43 Am. St. Rep. 172, 173), that equity will enjoin the action; and that plaintiffs, having failed to allege or prove that they are entitled to a patent from the government, cannot have defendant adjudged a trustee of the title for them, even if the title were in him.

The decree of the lower court will, therefore, be modified, and the defendant enjoined from prosecuting the action at law. Neither party shall recover costs.

MODIFIED.