Argued October 4, 1967, reversed January 31, petition for
rehearing denied February 27, 1968

WHITTLE, *Respondent, v.* WOLFF, *Appellant.*

437 P. 2d 114

*Ernest F. Gordon,* Klamath Falls, argued the cause
for appellant. With him on the briefs were Ganong,
Ganong & Gordon, Klamath Falls.

*Louise Jayne,* argued the cause and filed a brief for respondent.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

O'CONNELL, J.

Plaintiff seeks to recover damages resulting from the removal of sand and gravel by defendant from land in which plaintiff claims an interest. Defendant appeals from a judgment for plaintiff.

Plaintiff is the guardian of Clifford Wilson, a member of the Klamath Indian Tribe, who was an "enrollee" of a parcel of Indian land. The United States, through the Bureau of Indian Affairs, conveyed the parcel to defendant by a deed containing the following reservation:

> "All subsurface rights, except water, are hereby reserved in trust, for * * * Clifford Edgar Wilson * * *."[1]

The reservation was inserted in the deed pursuant to the Klamath Termination Act which, after providing generally for the removal of restrictions on allotted lands, contained the following provisions:

> "*Provided,* That the provisions of this subsection shall not apply to subsurface rights in such lands, and the Secretary is directed to transfer such subsurface rights to one or more trustees designated by him for management for a period not less

---

[1] Under the Klamath Termination Act (§ 8(c) of Public Law 587) the Secretary of the Interior, upon the request of the owner of allotted Indian lands, could sell the land on behalf of the owner.

than ten years." Act of August 13, 1954, Pub. L. No. 83-587, § 8(b), 68 Stat 718.

Defendant removed sand and gravel from the land and plaintiff filed the present action.

The only issue deserving review is the construction of the reservation in the deed. The trial court held that the reservation of "subsurface rights" was broad enough to include sand and gravel.[2]

■ The term "subsurface rights" has no fixed meaning. We may assume that the draftsman of the deed in question adopted the term from the statutes relating to rights of the Klamath Indians in lands conveyed on their behalf. It appears from the Congressional committee reports that the term "subsurface rights" was used in the statutes to describe mineral rights.[3]

---

[2] The trial court reasoned as follows:

"Congress having deliberately used the broad term 'subsurface rights,' and the grantor in the deed having deliberately and specially excluded therefrom such a prosaic substance as water, confirms to the Court that it was intended that 'subsurface rights' should embrace all substances of commercial value found under the surface of the lands in question."

[3] See House Report 2278 in 2 U. S. Code Congressional and Administrative News 3791 at 3798 (1958), explaining the amendments to the 1954 Termination Act of August 13, 1954, Pub. L. No. 83-587, 68 Stat 718. The act provided:

"(b) All restrictions on the sale or encumbrance of trust or restricted land owned by members of the tribe (including allottees, heirs, and devisees, either adult or minor) are hereby removed four years after the date of this Act, and the patents or deeds under which titles are then held shall pass the titles in fee simple, subject to any valid encumbrances: *Provided,* That the provisions of this subsection shall not apply to subsurface rights in such lands, and the Secretary is directed to transfer such subsurface rights to one or more trustees designated by him for management for a period not less than ten years. The titles to all interests in trust or restricted land acquired by members of the tribe by devise or inheritance four years or more after the date of this Act shall vest in such members in fee simple, subject to any valid encumbrance."

Therefore, we shall construe the language in the deed as a reservation of mineral rights.

The question is whether the reservation of "subsurface rights" or its equivalent, a reservation of mineral rights, embraces sand and gravel.

It has frequently been observed that the term "minerals" is not subject to exact definition and that it has a variety of meanings, dependent upon the circumstances in which it is used.[4] In some contexts sand and gravel are treated as minerals. Thus this court held in *Loney v. Scott*, 57 Or 378, 112 P 172, 32 LRA(NS) 466 (1910) that building sand was a mineral within the meaning of the United States mining statutes providing that "placer" claims were subject to entry. Similarly, gravel has been held to be a mineral for the purposes of classifying public lands subject to location and purchase under the mining laws.[5]

The foregoing cases are not helpful to us in construing the language of the deed in question. Sand and gravel may be classified as minerals or subsurface rights in the public land cases for reasons which have no relevance in determining whether such materials should be regarded as minerals in the interpretation of the language of a deed dividing the surface and subsurface interests between the grantor and grantee.[6]

---

[4] For various meanings see cases collected in Annotation: Clay, sand, or gravel as "minerals" within deed, lease, or license, 95 ALR2d 843 (1964); Annotation: What are "minerals" within deed, lease, or license, 17 ALR 156 (1922) supplemented in 86 ALR 983 (1933).

[5] Layman et al v. Ellis, 52 L.D. 714 (1929) overruling Zimmerman v. Brunson, 39 L.D. 310 (1910); Opinion, Taking of Sand and Gravel from Public Lands for Federal Aid Highways, 54 I.D. 294 (1933).

[6] It has also been suggested that even in the public land cases the interpretation today would be different. In 29 Op Att'y Gen

Although the laws relating to rights in Indian lands reflect a considerable solicitude for the tribe and its members, we have found nothing in any of the legislation, administrative rulings, or cases from which it could be argued that reservations in conveyances of Indian lands should be interpreted any more favorably to the grantor than reservations in conveyances of other lands.

██ The scope of a reservation in a deed is to be arrived at by determining the "judicially ascertained intent" of the grantor.[7] If the evidence does not disclose the grantor's intent, the deed is to be construed to conform to "the intent commonly prevalent among conveyors similarly situated."[8]

█ Proceeding upon this principle of construction, it has been held in numerous cases that the term "minerals" as commonly used in ordinary trading transactions does not include sand, gravel, clay and similar earth materials. *Salzseider v. Brunsdale,* 94 NW2d 502, 504 (N.D. 1959) is a representative case expressing this view. In that case the court said:

"* * * [A] reservation of 'minerals' con-

189, 190 (1958-60), after noting that Loney v. Scott, *supra,* held that minerals included sand, it was said:

"* * * It must be borne in mind, however, that the court in the Loney case was interpreting a federal statute, the interpretation of which would certainly be different today in view of recently enacted federal statutes providing that 'A deposit of common varieties of sand, stone, gravel, pumice, pumicite, or cinders shall not be deemed a valuable mineral deposit, within the meaning of the mining laws of the United States * * *.' 30 U.S.C.A., § 611."

The Attorney General held that the term "minerals" in ORS 275.294 authorizing counties to lease or convey "rights to explore or prospect for valuable minerals" did not include pumice or gravel.

[7] 3 Restatement of property § 241 (1940).

[8] 3 Restatement of Property § 243 (1940).

tained in a grant of agricultural lands does not, in the ordinary or commonly understood meaning of the word 'minerals' when so used, include gravel."

To the same effect is *Psencik v. Wessels*, 205 SW2d 658, 661-62 (Tex Civ App 1947), where the court said:

"* * * [I]n the common vernacular of those dealing in farm lands and mineral rights the term 'minerals' does not include ordinary commercial gravel. It may as well be held to include fertile top soil, which, under conditions arising subsequently to the grant, should become commercially valuable for replenshing lawns in an adjacent city, or other soil for filling lots or building road."[8]

Other reasons have been advanced for excluding sand and gravel from the mineral category in construing transfers and reservations of interests in land. Thus it has been reasoned that although an earth material is a mineral according to the definitions of science, the fact that the deposits are generally a part of the soil or near the surface warrants its consideration as a part of the surface rather than as part of the mineral estate.[9] Since sand and gravel are normally "so closely related to the soil, so nearly a part of the very surface, the soil itself, * * * [they are] reasonably and ordinarily considered a part of the soil and as belonging to the surface estate rather than as a part of the minerals or mineral rights" by the par-

---

[8] See also Cronkhite v. Falkenstein, 352 P2d 396 (Okla 1960) (gypsum); Atwood v. Rodman, 355 SW2d 206 (Tex Civ App 1962) (limestone); Watkins v. Certain-Teed Products Corp., 231 SW2d 981 (Tex Civ App 1950) (sand and gravel); Heinatz v. Allen, 147 Tex 512, 217 SW2d 994 (1949) (limestone); State Land Board v. State Dept. of Fish & Game, 17 Utah2d 237, 408 P2d 707 (1965) (sand and gravel).

[9] Heinatz v. Allen, 147 Tex 512, 217 SW2d 994 (1949).

ties to a transfer of interests in land. *Heinatz v. Allen,* supra note 10 at 997.[①]

The close relation of sand and gravel to the surface is the basis for another reason advanced by some courts. The point has been made that the removal of sand or gravel from the land normally results in the removal of the surface soil and that the "destruction of agricultural land is sufficient reason for holding that the word 'mineral' used in a reservation of conveyance does not include gravel."[②]

In the present case the evidence shows that the gravel which had been removed was located under topsoil varying in thickness from six inches to two feet. Some of the gravel was removed from pits dug to a depth of four and one-half to seven feet and comprising in lateral area three and one-half acres. The total area of the land conveyed was 140 acres. The evidence does not disclose the extent to which gravel lay under other parts of the parcel. The photographs introduced into evidence show the destructive effect which the removal of the gravel had upon the surface of the land. The excavation of gravel from other parts of the land would almost certainly have the same destructive effect.

If we were to hold in this case that the right to extract sand and gravel was reserved to the grantor, we would have to assume that those who purchase land subject to a mineral reservation do so in contemplation of the possible destruction of their interest in the event that gravel lies under the surface of the land conveyed.

[①] See also Annotation: Clay, sand, or gravel as "minerals" within deed, lease or license, 95 ALR2d 843, 863 (1964).

[②] Bambauer v. Menjoulet, 214 Cal App2d 871, 872, 29 Cal Rptr 874, 95 ALR2d 839 (1963); Farrell v. Sayre, 129 Colo 368, 270 P2d 190 (1954); Psencik v. Wessels, 205 SW2d 658 (Tex Civ App 1947); Waring v. Foden, [1932] 1 Ch 276, 86 ALR 969 (1932).

We do not believe that parties to land transactions in this state normally have this understanding of the effect of a mineral reservation. We hold that the right to the sand and gravel in the land conveyed to defendant passed by the deed and that plaintiff has no right to recover for their removal.

The judgment of the trial court is reversed.

SLOAN, J., dissenting.

The majority ignore that it is public land that was conveyed by a deed from the United States which contained the reservation in question; that there is a hundred years of Congressional policy and intent regarding such lands and that the law is emphatic that a grant of the federal public lands must be clearly expressed, never implied. This is not a case for the application of the rule ' "that intent commonly prevalent among conveyors" ' must be determined. *United States v. Union Pacific R. Co.*, 1957, 353 US 112, 77 S Ct 685, 1 Led2d 693; *Northern P. R. Co. v. Soderberg,* 1903, 188 US 526, 23 S Ct 365, 47 Led 575; *Dunbar Lime Co. v. Utah-Idaho Sugar Co.*, (CCA 8th Cir 1926) 17 F2d 351. The cited authorities establish that the reservation in the instant deed was intended to include the sand and gravel removed from this particular land.

It appears that the State Department of Geology and Mineral Industries defines sand and gravel as a mineral substance as did the legislature by definition in ORS 516.010. Although the latter authorities are not, perhaps, compelling, their significance should be considered. By the definition of mineral found in 1 Lindley, Mines (3d ed 1941), § 98, the classification by the state department would be important, particularly

if such a classification is recognized by the trade or industry, as it likely is.

In addition, *Loney v. Scott,* 1910, 57 Or 378, 112 P 172, 32 LRA(NS) 466, correctly states the law that the sand and gravel was mineral.

By refusing to heed the authorities cited—to accept or reject them—and to respond with indifference to the Congressional policy and intent in respect to a grant of public lands can very well warp the development of any cohesive and consistent mineral law in the state.

The judgment should be affirmed.