Argued January 25, affirmed May 7, petition for
review denied July 31, 1979

# G. R. KIRK COMPANY, *Respondent,*
## *v.*
# PORT OF NEWPORT, *Respondent,*
# GRAHAM et al, *Appellants.*
## (No. 35920, CA 10941)

594 P2d 845

James M. Gillis, Newport, argued the cause for appellants Jack Lee Graham and Charlene Ruth Lockman, Co-Personal Representatives of the Estate of Verne Ross; Edith McElwain; the unknown heirs and devisees of Fred C. Ross; the unknown heirs and devisees of Jack Lynn Ross; the unknown heirs and devisees of Ethel Bateman; the unknown heirs and devisees of Molly L. Graham; the unknown heirs and devisees of Grace D. Carroll; and all other persons or parties unknown claiming any right, title, estate lien or interest in the real property described in the complaint herein. With him on the briefs was Litchfield, MacPherson, Carstens & Gillis, Newport.

■

J. Michael Alexander, Salem, argued the cause for appellant Vernie Hansen. With him on the briefs was Brown, Burt & Swanson, P. C., Salem.

Larry A. Brisbee, Hillsboro, waived appearance for respondent G. R. Kirk Company.

Charles F. Adams, Portland, argued the cause for respondent Port of Newport. With him on the brief were Davies, Biggs, Strayer, Stoel and Boley, Portland, and Minor, Yeck & Beeson, Newport.

Before Schwab, Chief Judge, and Buttler and Joseph, Judges.

BUTTLER, J.

■

**BUTTLER, J.**

This proceeding was commenced by plaintiff to quiet title to certain tidelands. That dispute was settled during the litigation and is not involved here. The defendants Port of Newport and the heirs and successors of Ethel O. Ross, however, asserted cross claims to quiet title to the ownership of Lots 3 and 4. This appeal involves only the cross claims.

In February, 1928, Ethel O. Ross obtained from Lincoln County a deed conveying to her real property described as Lots 3 and 4, Block 1, Olsson's Second Addition to Newport. Most, if not all, of that property is tidelands, and whether Ethel Ross acquired anything by that deed depends on whether the County held title to the tidelands at that time, and, if so, whether its deed to Ethel Ross conveyed those lands to her. The Port of Newport claims ownership by virtue of a separate chain of title originating with a deed from Lincoln County executed in 1928, but subsequent to the deed to Ethel O. Ross, conveying title to tidelands described by metes and bounds. The issue is whether the heirs and successors of Ethel O. Ross or the Port of Newport own the tidelands in question.

To understand the dispute, some history is necessary. In 1867 the United States Government Land Office (GLO) conducted a survey which established the boundaries of what was described as "Government Lot 1" in Section 8, Township 11 South, Range 11 West of the Willamette Meridian. The southern boundary of that lot was described as "the meander line." In 1871 the United States executed a patent to John A. Olsson to certain property, including Government Lot 1, and in 1884, John A. Olsson recorded the plat of "Olssen's Second Addition to the City of Newport" showing the southern boundary as "the meander line," which is conceded to be the same as the 1867 Government Land Office meander line.

The following diagram shows Olsson's Plat and, for illustrative purposes only, the line designated "B"

indicates the 1867 GLO meander line as the southern boundary; Line "A" is the high tide line as surveyed in 1912. The shaded area between those two lines in Lots 3 and 4, Block 1, is the property in dispute.

■ It is conceded that the United States patent to Olsson did not pass title to the tidelands because title to those lands was in the State of Oregon as of the time Oregon became a state in 1859. *See Pollard's Lessee v. Hagan et al.,* 44 US (3 How) 212, 11 L Ed 565 (1845); *Corvallis & Eastern R. Co. v. Benson,* 61 Or 359, 121 P 418 (1912),*appeal dismissed* 235 US 691 (1914). However, the plat filed by Olsson in 1884 included within its description land which was tideland, the southernmost boundary of which was the 1867 GLO meander line. To confuse the situation further, the Oregon legislature in 1874 conveyed the tideland in Benton (now Lincoln) County to Willamette Valley and Coast Railroad. (Oregon Laws 1874, p 51.) In 1885, the Oregon legislature purported to "reenact and amend" the 1874 act; in doing so, it expressly waived all rights reserved under the prior act, any failure to comply with any of the provisions thereof, and extended the time for performance by the railroad grantee for a period of seven years from October 14, 1878. It also provided that the 1874 conveyance to the railroad should not "be construed so as to vest any title in said Willamette Valley and Coast Railroad company to any lands * * * for which a patent * * * has been issued by the United States * * * to any person, prior to January 1st, 1885," and that "any * * * tide lands belonging to the state * * * which are embraced in the lands covered by patent * * * from the United States * * * is hereby released and confirmed by this State to the person or persons holding such patent * * *."

The record does not reveal whether Lincoln County authorities considered the 1885 act as vesting title to the tidelands in question in John A. Olsson. On its face, however, it did so. A federal court decision in *Case v. Loftus,* 43 F 839 (CC D Oregon 1890), held that another section of the same statute which purported to convey certain tidelands to the city of Newport was fatally defective because the title of the act did not indicate an intent to grant tidelands to the city of Newport. Or Const, Art IV, § 20. In 1912 the Oregon

[53]

Supreme Court in *Corvallis and Eastern R. Co. v. Benson, supra,* held that a subsequent statute enacted by the Oregon legislature in 1909 which purported to repeal the entire conveyance to the railroad was invalid. While some of the language used by the Court in the *Corvallis & Eastern R. Co.* case, and the reasoning of the federal court in the earlier case, may indicate that the 1885 legislation was not effective to transfer title to the tidelands to Olsson, it was not until 1966 when the Court decided *Bland v. Alsea Bay Port Com.,* 243 Or 541, 414 P2d 814 (1966), that one could say with certainty that the section of the 1885 legislation here involved was invalid for the reasons set forth by the federal court in *Case v. Loftus.*

Whatever may have been the local knowledge of the state of the law in those early days, it is conceded correctly that Olsson did not own the tidelands encompassed within the recorded plat within which Lots 3 and 4, Block 1 were set. Nevertheless, Olsson purported to convey title to Lots 3 and 4 to private individuals, and in 1921 Lincoln County foreclosed against those lots for failure of the owners to pay taxes. In 1927 it purchased those lots at a Sheriff's sale and in 1928 the County conveyed Lots 3 and 4 to Ethel O. Ross. No one has been in actual possession of those lots, but Ethel Ross and her successors have paid the taxes on them.

In the meantime, the interest of Willamette Valley and Coast Railroad in the tidelands was, by mesne conveyances, acquired by Southern Pacific Company, which failed to pay taxes thereon. In 1923, Lincoln County foreclosed against those tidelands. In the decree entered in that foreclosure, the tidelands were described by metes and bounds, which description ended with the following statement: "All the above described land except that portion lying above or beyond the meander line * * *."[1] The County purchased the lands at the Sheriff's sale, and the Sheriff's

---

[1] Abbreviations which appear in the official records are spelled out.

deed to the County used the same property description, including the language quoted above. The 1928 deed from Lincoln County to the Port of Newport used the same property description, including the same language quoted.

As a result of the County's foreclosing against Lots 3 and 4, the County acquired by purchase at the foreclosure sale whatever property was owned by the owners of Lots 3 and 4, which, in turn, was no more than what Olsson owned. It is clear that conveyance of the lots by Olsson did not pass title to the tidelands, nor did the foreclosure affect them. It is less clear what the County acquired as a result of purchasing the Southern Pacific tidelands at the Sheriff's sale.

However, the property descriptions contained in the decree of foreclosure of the Southern Pacific tidelands, the Sheriff's deed to the County, and the County's deed to the Port of Newport is the same, including the language excepting that portion "lying above or beyond the meander line." The initial question is, what does that language mean?

If the reference to the "meander line" is to the mean high tide line, which was not determined until 1912 when the Southern Pacific Company made a survey, then the County acquired all of the tidelands in question as a result of its foreclosure against Southern Pacific Company. If, however, the "meander line" referred to is the 1867 GLO meander line, then the County did not acquire the tidelands beyond that line, but title remained in Southern Pacific Company, which, in 1963 executed a quit claim deed in favor of the Port of Newport conveying the tidelands, including those in question.

In our view, the historical facts as they existed at the time of the County's foreclosures in 1923 strongly indicate, if they do not require the conclusion, that the reference to 'the meander line' was to the 1867 GLO meander line. That line was the only one relating to

Yaquina Bay characterized as "the meander line" at that time, and was the southern boundary of "Government Lot 1" and also of Lots 3 and 4, Block 1 of Olsson's Second Addition to Newport. That is what the public records showed immediately prior to the tax foreclosure suits. Additionally, there is testimony of the tax assessor, which was submitted under an offer of proof,[2] to the effect that the assessed values of those lots at and prior to 1928 were substantially equivalent to upland lots of the same size, and therefore must have been based on the assumption that Lots 3 and 4 extended to the GLO meander line. It appears to be undisputed, and the trial court found, that Lots 3 and 4 were entirely tidelands and included no land above high water. That being the case, the County at least acted as if Lots 3 and 4 contained land which was subject to tax and was worth the expense of a foreclosure suit to collect unpaid taxes.

With respect to the foreclosure suit against Southern Pacific tidelands, however, it appears that the County was careful to draw the northernmost line of those tidelands at the southernmost lines of Lots 3 and 4 as platted, namely, the 1867 GLO meander line.

The contention that the reference to "the meander line" must be construed to mean the high tide line because that line is a permanent natural monument is not persuasive in this case. It is true that where there is a discrepancy between a distance call which runs to a natural monument, the monument controls over the distance call. *See, e.g., Hennigan v. Mathews,* 79 Or 622, 155 P 169 (1916). But that is not the case here— there is no discrepancy between a distance or course call and a line or monument: everything "above or beyond the meander line" is excepted from the property described by metes and bounds.

---

[2] We consider the evidence as relevant to what Lincoln County authorities considered to be the situation in 1928 and prior years. It is, at best, a make-weight.

[56]

■■ There is also authority for the proposition that a general reference to a meander line run on the ground does not control over a shore line, which is a natural boundary, if there is a discrepancy, unless there is evidence of an intention to use the surveyed meander line. *See Live Stock Co. v. Springer,* 35 Or 312, 58 P 102 (1899), *aff'd* 185 US 47, 22 S Ct 563, 46 L Ed 800 (1901); *United States v. 100 Acres of Land, Etc., Marin Cty., Cal.,* 468 F2d 1261, 1264, n 1 (9th Cir 1972), *cert den* 414 US 822, 414 US 864 (1973). We think it clear that such an intention existed here. In addition to what we have said with respect to Lots 3 and 4, there is evidence that conveyances in Lincoln County distinguished between the high tide line and "the meander line." If there is doubt as to the grantor's intent with respect to a reservation in a deed, it is to be construed "to conform to the intent commonly prevalent among conveyors similarly situated." *Whittle v. Wolff,* 249 Or 217, 437 P2d 114 (1968).

Examples of the distinction are found in the same decree foreclosing Southern Pacific's tidelands involved herein, and also in the 1928 deed from the County to the Port of Newport which conveyed the tidelands, in addition to those in question, to the Port. Those descriptions start: "Begining at a point on the high tide line * * * [metes and bounds description], all the above described land except that portion lying above or beyond the meander line." It is apparent that "the high tide line" was considered separate and distinct from "the meander line."

We conclude, therefore, that the meander line referred to in the foreclosure decree and the subsequent deeds of the lands described therein was the 1867 GLO meander line. As a result, there is a hiatus between what was owned by the owners of Lots 3 and 4 and the tidelands sold as a result of the Southern Pacific tax foreclosure.

Accordingly, since we conclude that the County did not acquire the tidelands in question, it is not neces-

sary to determine whether those tidelands were included in the deed to Ethel O. Ross conveying Lots 3 and 4 to her; the County did not own them, and therefore could not have conveyed them. It also follows that the Port of Newport did not acquire the tidelands from Lincoln County; however, it did acquire them by the quitclaim deed from Southern Pacific Company in 1963.

The trial court entered a decree quieting title to the tidelands in question in the Port of Newport, albeit its reasons for doing so were different from those set forth herein. The decree is affirmed.