Argued and submitted September 28, 1983, affirmed May 2, reconsideration denied
June 15, petition for review denied July 24, 1984 (297 Or 492)

## WEATHERS et al,
*Respondents,*

*v.*

## M. C. LININGER & SONS, INC. et al,
*Appellants.*

(81-3627-NJ-3; CA A26812)

682 P2d 770

Karen C. Allan, Medford, argued the cause for appellants. With her on the brief was Foster & Purdy, Medford.

Ervin B. Hogan, Medford, argued the cause and filed the brief for respondents.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

## YOUNG, J.

This is a declaratory judgment action, ORS 28.020, to determine the rights of the parties under an agreement dated November 19, 1980, titled "Agreement for Mining, Sales and Processing of Basaltic Shale Rock, Topsoil and By-Products Thereof." Plaintiffs, owners of the land which is the subject of the agreement, sought a declaration that: (1) a price-fixing provision is a restraint of trade in violation of ORS 646.725 and is illegal, causing the entire agreement to be void and unenforceable; (2) plaintiffs are entitled to use the road traversing the land for access to adjacent land; and (3) plaintiffs are entitled to sell or assign their rights reserved under the agreement to extract and sell rock from the land.

Defendants moved for a partial summary judgment on plaintiffs' claim that the agreement was void. The trial court ruled that the price-fixing provision was unenforceable, but because that provision is severable, the remainder of the agreement is enforceable. No challenge is made to that ruling. Plaintiffs' remaining claims were tried by the court without a jury. The court ruled that under the agreement:

"1. * * * Plaintiffs have the right to use the road traversing the property * * * for ingress and egress to and from [their other adjacent land consisting of 160 acres,] provided that such use of said road shall not substantially interfere with the material removal operations of defendant[s] * * * pursuant to the rights granted to defendants * * * in said agreement of November 19, 1980.

"2. * * * Plaintiffs have the right to grant permissive use of the road traversing the property which is the subject of said agreement * * * provided that such use of said road shall not substantially interfere with the material removal operations of defendants * * *.

"3. * * * [T]he rights reserved to plaintiffs by * * * [the] agreement * * * are not subject to any restriction against alienation and may be exercised by plaintiffs by sale, assignment or contract to or with third persons."

Plaintiffs, as the prevailing parties, were awarded their costs, including reasonable attorney fees.

On appeal defendants contend that it was error to declare that (a) plaintiffs have a right to use the road traversing the subject property for access to their adjoining 160-acre

parcel and to grant permissive use of the road to third person and that (b) the rights reserved to plaintiffs to extract and sell rock materials are assignable and to find that plaintiffs are the prevailing parties entitled to costs and attorney fees. We affirm.

In 1979, plaintiffs purchased a 520-acre parcel of land in Jackson County for the purpose of developing a rock quarry. They obtained a zone change to aggregate resource (AR) for approximately 250 acres of the 520-acre parcel. Plaintiffs then developed the land zoned AR as a quarry and engaged in the extraction, processing and sale of rock from the quarry during the spring and summer of 1980. During that summer, defendants negotiated with plaintiff to lease the AR land. Those negotiations culminated in the agreement dated November 19, 1980, which was drafted by defendants' attorney. On December 17, 1980, plaintiffs purchased a 160-acre parcel of land adjoining the AR land. They acquired this additional land to develop a rock quarry. The evidence is that the purchase of the 160-acre parcel by plaintiffs was not contemplated by the parties when the November 19, 1980, agreement was entered into.

When the parties executed the agreement, access to the AR land was by a road connecting with Highway 140. After the 160-acre parcel was purchased, plaintiffs extended the road from the AR land through the 160-acre parcel, returning to and terminating in the AR land. After completing the road, plaintiffs began quarrying rock on the 160-acre parcel and hauling it on the road traversing the AR land. Defendants objected to their use of the road across the AR land. Defendants' position was that plaintiffs had the right under the agreement only to use the road across the AR land to show the land to prospective buyers, to remove and cut firewood or to haul an agreed quantity of rock reserved by plaintiffs from the AR land. Defendants then blocked the road, and this action followed.

 First, we turn to the scope of our review. Declaratory judgment proceedings requesting the construction of a contract are legal in nature. *See C & B Livestock v. Johns,* 273 Or 6, 10, 539 P2d 645 (1975). In this action, the trial court ruled, without objection, that the agreement is unambiguous. On appeal, defendants briefed and argued the case on that basis.

We deal with the construction of the agreement as a question of law without resort to extrinsic evidence. *Stark Street Properties v. Teufel,* 277 Or 649, 661-62, 562 P2d 531 (1977); *Lee v. State Farm Auto. Ins.,* 265 Or 1, 3, 507 P2d 6 (1973).

We consider first the extent of plaintiffs' rights under the agreement to use the road across the AR land. The purpose of the agreement is:

"3. Commencing December 1, 1980, lessee shall have the exclusive right to enter upon and to excavate and remove basaltic shale rock, topsoil and any by-product thereof, herein after collectively called 'materials' except as specifically reserved in Article 21 of this agreement."

The parties dispute the nature of the legal relationship created by the agreement. Defendants argue that the agreement is a "lease" which creates in them as lessees a possessory leasehold interest in the AR land to conduct a quarry operation and that they are entitled to exclusive possession, except for the reserved right of plaintiffs to enter the land to inspect, cut wood and extract a limited quantity of rock as provided in Article 21. Defendants' argument appears to be premised on the rule that a landlord vests his tenant with exclusive possession which precludes the landlord's entry except for certain limited purposes. *See Sproul et al v. Gilbert et al,* 226 Or 392, 403, 359 P2d 543 (1961). Plaintiffs contend that, if the agreement is a lease, then it is a mineral lease and different rules of construction apply. *See Fremont Lbr. Co. v. Starrell Pet. Co.,* 228 Or 180, 183-84, 364 P2d 773 (1961).[1]

The agreement not only contains language customarily found in leases, it contains all the essential provisions of a lease. In summary, defendants, as "lessees," have the "exclusive right" to excavate and remove "materials" from the AR land, except that plaintiffs reserve the right "during the first ten (10) year term of the lease" to mine and sell a specific quantity of rock from it. The initial term is ten years with provision for additional terms of ten years, each at defendants' option. Defendants are entitled to stockpile on the

---

[1] The parties have argued the case as though "basaltic shale rock, top-soil and any byproduct thereof" are "minerals." Accordingly, we are not required to decide that question. *See Whittle v. Wolff,* 249 Or 217, 437 P2d 114 (1968); *Loney v. Scott,* 57 Or 378, 112 P 172 (1910).

premises and to "erect and operate permanent and portable plants which may be necessary or convenient for the processing and removal of materials including an asphalt batch plant, a CTB plant or any other plant which may be agreed upon by the parties." Defendants are required to make royalty payments and to pay a minimum cash rental. Provision is made for the payment of real property taxes and the allocation of depletion allowances. Defendants must conduct their quarrying operation in a good and workmanlike manner and they must comply with state reclamation laws and regulations. The "lessors" and "lessees" have to carry certain specified public liability and property damage insurance. The agreement contains a default clause and a succession clause. It is clear from the terms of the agreement that the parties contemplated that defendants would have the right to use the AR land in all ways reasonably necessary to develop the quarry and to extract, produce and sell rock materials, which by necessity includes the destruction of the surface.[2]

**3.** In general, to create a leasehold interest the lessee must be granted the right of possession. *Sproul et al v. Gilbert et al, supra:*

> "It is commonly said that the lessee must have 'exclusive possession' * * * but this is not strictly true because all possessory interests, including even a fee simple, are subject to limitations making the possessory right something less than exclusive. Translating 'exclusive possession' to mean the right to exclude others, it is apparent that as against the lessor the exclusiveness of possession may vary depending upon the restrictions imposed upon the transferee's use by the creating instrument. * * * Even in the absence of express reservations in the creating instrument, the lessee's right to exclude others is less than complete for the landlord always has the right to enter to demand rent and to make repairs." 226 Or at 403. (Citations omitted.)

In the present case, the language of the "lease" reveals an intent to transfer to defendants not only the right to conduct a quarry operation, but also the right to restrict entry. With respect to the control of the premises the agreement provides:

---

[2] For discussion of the severance of surface and subsurface estates *see Yaquina Bay Timber v. Shiny Rock Mining,* 276 Or 779, 556 P2d 672 (1976); *Whittle v. Wolff,* 249 Or 217, 437 P2d 114 (1968).

"11. Lessee shall restrict entry to the general public to all portions of the leased property as is necessary to protect persons and property from harm arising from lessee's activities and operations upon the property. Lessee may also request that the lessors restrict entry to any portion of the other property of lessors as may be necessary to protect lessees' employees and property from harm arising from activities and operations upon lessors' property. The lessors retain full rights to all wood and timber upon the property during the term of this lease. Lessors shall notify lessee when any sales of wood or timber shall be made which may involve granting permission for others to come upon the property. Lessors and lessee shall mutually cooperate to allow lessors to remove the wood and timber without unduly interfering with lessees' operations. Lessee shall notify its employees that the property may not be used by lessees' employees for hunting, wood cutting, or other recreational or personal activities without the express written permission from lessors and lessee."

In *Sproul et al v. Gilbert et al, supra,* the court said:

"In many cases where the privilege of use is limited to the severance of a part of the land itself the grantee's interest is described as a lease. * * * Where the grant consists only of the privilege of severing and removing a part of the land itself, the grantor retaining possession, the interest transferred is more properly regarded as a profit a prendre * * *." 226 Or at 412. (Citations omitted.)[3]

*See also Stinson v. Hardy,* 27 Or 584, 41 P 116 (1895).

■ On the basis of the foregoing, it is our conclusion that defendants acquired a possessory interest (as opposed to a license) in the AR land and that the agreement is in the nature of a mineral lease. The question remains whether plaintiffs have the right to use the road across the AR land. The agreement makes specific reference to the joint use of the road:

---

[3] In *Jackson County v. Compton,* 289 Or 21, 609 P2d 1293 (1980), the original landowner leased property to the county for the processing and removal of river-run rock. The court held that the lease granted the county a *profit a' prendre,* which "is the right to acquire, by severance or removal from another's land, some thing or things previously constituting a part of the land. Profits include the right to take gravel, stone or minerals from another's land * * *." 289 Or at 24. The profit to take rock is an interest which "created an encumbrance on the land because the profit included the right, in the nature of an easement, to enter the land to process, stockpile and remove rock." 289 Or at 30.

"4. Lessee shall * * * improve and maintain the whole road, including the construction of a new bridge across the mid irrigation canal. Lessors and lessee agree to reasonably apportion the road maintenance costs based upon the respective uses."

It is clear from the provision for shared maintenance costs that the parties contemplated plaintiffs' continued use of the road. Defendants argue that that use of the road is limited to hauling the wood or rock that plaintiffs reserved. To aid in the construction of the lease, we look to the law of mineral leases.

██ *Fremont Lbr. Co. v. Starrell Pet. Co., supra,* involved a lease for exploring and developing "oil, gas, sulphur and all other minerals" and concerned the construction of the lease. The court said:

"Mining leases form a distinct class of instruments, creating special and peculiar legal rights and relations. In their principal features they are not unlike other leases, but in their purpose and operation they approach more closely gas and oil leases * * * and the courts generally apply the same rules of construction to them alike." 228 Or at 183-84. (Citations omitted.)

Without specific terms to the contrary, the lessee in a mining lease is granted only those rights in the surface necessary for the mining operation and the surface owner (lessor) retains the right to use the surface for all purposes consistent with the lessee's use. One commentator states the following as a general rule:

"* * * In the absence of a definite expression of rights in the instrument or instruments creating the severance, the mineral owner has a right in the surface to use the surface for everything necessary to recover the mineral and consistent with the enjoyment of such right to produce and remove, *and the surface owner has the right to use the surface for all other purposes not inconsistent with or interfering with the mineral owner's use.*" Healy, *Rights of Mineral Owners in Surface,* 1 Rocky Mtn. Mining L Inst 85, 92 (1955). (Emphasis supplied.)

There can be no doubt that the agreement is a mineral lease. It is for the limited purpose of quarrying basaltic shale and byproducts. It specifically contemplates dual use of the surface by reserving to plaintiffs certain timber rights and requiring their permission for defendants' employes to use any of the

property for hunting, woodcutting, recreational or personal activities. In the absence of a lease provision to the contrary, the trial court did not err when it ruled that plaintiffs or their permittees may use the road for any purpose which does not interfere with defendants' use.

■■ The next issue is whether plaintiffs' reserved right to extract, process and remove rock from the quarry on the AR land is assignable. The agreement gives defendants the exclusive right to excavate and sell material from the AR land subject to the following:

> "Lessors shall be entitled to mine and sell materials without limitation from said property from December 1, 1980, to December 1, 1981. From December 1, 1981, until December 1, 1982, the maximum sales by lessors shall not exceed 100,000 cubic yards. Commencing December 1, 1981, and each year thereafter during the first ten (10) year term of this lease lessors allowable sales shall be 60,000 cubic yards per year."

The general rule is that contract rights are assignable. Exceptions are where the contract prohibits assignment or where the contract is personal in nature. *Folquet v. Woodburn Schools,* 146 Or 339, 29 P2d 554 (1934). The lease contains an assignment clause which provides:

> "Subject to the above stated limitation on the transfer of lessors' interest [the right of first refusal] this lease shall be binding and inure to the benefit of the parties, their respective assessors and assigns. Lessees shall not assign, sublease, or sell its interest in this lease without obtaining prior approval of lessors, and lessors agree not to unreasonably withhold their approval."

■ ■ Use of the word "assigns" constitutes an express consent to assignment. *Vaughan et ux v. Wilson et al,* 203 Or 243, 256, 279 P2d 521 (1955). Under the provision, both parties may assign their interests in the lease, although lessees must obtain prior approval. The trial judge correctly ruled that the reservation of the right to take a specified quantity of rock was assignable.

■ Finally, defendants argue that the trial court incorrectly awarded attorneys fees to plaintiffs under the contract provision which provides for attorney fees to the "prevailing party." The trial court ruled in favor of plaintiffs on both counts of their declaratory judgment action. They prevailed.

*Carlson v. Blumenstein,* 293 Or 494, 651 P2d 710 (1982). The award of attorney fees was proper.

Affirmed.